BAKER v ARBOR DRUGS, INC

Docket No. 168866. Submitted March 14, 1995, at Detroit. Decided January 16, 1996, at 9:15 A.M. Leave to appeal sought.

Robin A. Baker, as personal representative of the estate of Robert F. Baker, brought an action in the Wayne Circuit Court against Arbor Drugs, Inc., claiming negligence, violations of the Michigan Consumer Protection Act, and fraud. The plaintiff alleged that the decedent suffered a stroke as a result of the harmful interaction of two prescription drugs dispensed by the defendant to the decedent and that this occurred despite Arbortech Plus, a computerized system maintained and advertised by the defendant to keep track of clients' medication histories to guard against harmful drug interactions. The court, John H. Gillis, Jr., J., granted summary disposition for the defendant. The plaintiff appealed.

The Court of Appeals *held:*

1. A pharmacist generally is not liable for correctly filling a prescription, owes no duty to warn a customer of the possible side effects of a prescribed medication, and owes no duty to monitor a customer's drug usage. However, a pharmacist may voluntarily assume a function for which the pharmacist is not legally obligated. In this case, the defendant voluntarily assumed a duty of care by maintaining and advertising Arbortech Plus. The trial court erred in determining that, as a matter of law, the defendant owed no duty of care that was actionable for negligence.

2. Questions of fact exist with respect to whether the defendant's advertisements of Arbortech Plus violated § 3(1)(c),(e), and (g) of the Michigan Consumer Protection Act, MCL 445.903(1)(c),(e),(g); MSA 19.418(3)(1)(c),(e),(g), and the defendant, insofar as the advertisements at issue were concerned, was not exempt from the act under § 4(1)(a), MCL 445.904(1)(a); MSA 19.418(4)(1)(a). Section 4(1)(a) makes the act inapplicable to a

REFERENCES

Am Jur 2d, Drugs and Controlled Substances §§ 73, 229, 231; Fraud § 12.
See ALR Index under Drugs and Narcotics; Fraud and Deceit.

transaction or conduct specifically authorized under laws administered by a regulatory board or officer. Advertising by pharmacists is not subject to regulation by the Pharmacy Board and therefore is subject to the Michigan Consumer Protection Act. The trial court erred in summarily dismissing the claims based on the Michigan Consumer Protection Act.

3. The trial court erred in summarily dismissing the fraud claim. Reasonable jurors could conclude with respect to Arbortech Plus that the defendant made material misrepresentations with the intent to induce reliance on the representations and that the decedent relied on the representations and suffered injury as a result.

Reversed and remanded for further proceedings.

1. DRUGGISTS — MEDICATION HISTORIES — DRUG INTERACTIONS — NEGLIGENCE.

A pharmacist, by maintaining and advertising a computerized system that keeps track of clients' medication histories to guard against harmful drug interactions, voluntarily assumes a duty of care, a breach of which is actionable for negligence.

2. CONSUMER PROTECTION — DRUGGISTS — ADVERTISEMENTS — MICHIGAN CONSUMER PROTECTION ACT.

Advertisements by a pharmacist of a computerized system to keep track of clients' medication histories to guard against harmful drug interactions are subject to the Michigan Consumer Protection Act (MCL 445.903[1], 445.904[1][a]; MSA 19.418[3][1], 19.418[4][1][a]).

3. FRAUD — ELEMENTS.

Actionable fraud requires proof that the defendant made a material representation, that the representation was false, that the defendant knew the representation was false or made it recklessly without knowledge of its truth or falsity, that the defendant made the representation with the intent that the plaintiff would act upon it, and that the plaintiff acted in reliance upon the representation and suffered injury.

*Chambers Steiner* (by *Angela J. Nicita*), for the plaintiff.

*Welch, MacAlpine, Bahorski, Bieglecki & Farrell, P.C.* (by *Robert F. MacAlpine* and *Marc P. Shaberman*), for the defendant.

Before: JANSEN, P.J., and CORRIGAN and T. G. KAVANAGH,* JJ.

JANSEN, P.J. Plaintiff, Robin A. Baker, appeals as of right from a September 21, 1993, order of the Wayne Circuit Court granting summary disposition for defendant, Arbor Drugs, Inc., pursuant to MCR 2.116(C)(10). We reverse.

This case concerns the scope of a pharmacy's duty to a customer. The decedent, Robert F. Baker, and plaintiff were married. Dr. Arthur Hewitt had prescribed the drug Parnate for the decedent's depression after an attempted suicide in October 1989. Parnate is grouped in a class of drugs known as monoamine oxidase inhibitors and can cause severe complications if taken with certain foods or other medications. Decedent was well aware of the dangers of adverse reactions with Parnate and strictly followed instructions given by his physician and the drug's manufacturer.

On February 26, 1992, decedent developed a cold, and went to see Dr. Henry Tomashevski at the Park Medical Center. A notation in Dr. Tomashevski's medical records indicated that decedent was taking Parnate. Additionally, plaintiff testified at her deposition that decedent told her that he had twice informed Dr. Tomashevski during the examination that he was taking Parnate. Dr. Tomashevski prescribed two medications for the decedent: Ceftin (an antibiotic) and Tavist-D (a decongestant).

Decedent went to the Arbor Drugs store in Wyandotte where he normally went to have his prescription for Parnate filled. Decedent had had his prescription for Parnate filled at Arbor Drugs eleven days earlier. Penelope Serafim was the

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

pharmacist who filled the prescriptions for Ceftin and Tavist-D. Serafim testified at her deposition that she was not aware that decedent was taking Parnate when she filled his prescriptions for Ceftin and Tavist-D. According to Serafim, because of Arbor Drugs' computer system known as "Arbor-tech Plus," a drug interaction was detected between Tavist-D and Parnate, which had been filled earlier. Serafim testified that she did not personally see the interaction indicated on the computer, probably because a technician overrode it. Serafim, however, was sure that the computer detected the interaction because the letter "I" appeared next to the price on the prescription label. Serafim further testified that she was personally aware that Parnate and Tavist-D should not be taken at the same time. Had she known that decedent was taking Parnate, Serafim would not have filled the prescription for Tavist-D.

Decedent purchased his cold medications and consumed the prescribed doses at home. Later that evening, he complained to his wife that he was not feeling well. They referred to the patient information literature provided with Parnate, and believed that he was suffering from a hypertensive attack. Plaintiff took decedent to the hospital, where he was diagnosed as having suffered a stroke. The stroke was a result of ingesting both Parnate and Tavist-D.

On June 22, 1992, plaintiff and decedent filed suit against Dr. Tomashevski, Park Medical Center, and Arbor Drugs. The claims against Dr. Tomashevski and Park Medical Center were settled out of court. On July 16, 1992, decedent committed suicide. He left a note claiming that, among other things, the stroke was too much for him. Plaintiff, as personal representative of decedent's estate, pursued the suit against Arbor

Drugs. Plaintiff's second amended complaint alleged negligence, violations of the Michigan Consumer Protection Act, and fraud.

Defendant filed a motion for summary disposition, which was granted by the trial court. The trial court ruled that there was no duty on the part of the pharmacy and that liability was with the doctor. The trial court, thus, granted summary disposition in defendant's favor regarding all three counts of plaintiff's complaint.

I

As her first issue, plaintiff argues that the trial court erred in granting summary disposition of her negligence claim on the basis that defendant owed no duty of care to decedent. Plaintiff contends that defendant voluntarily assumed a duty by implementing and using its Arbortech Plus system.

Defendant moved for, and the trial court granted, the motion for summary disposition with regard to the negligence claim pursuant to MCR 2.116(C)(10). We review the trial court's decision on a motion for summary disposition de novo. *Babula v Robertson,* 212 Mich App 45, 48; 536 NW2d 834 (1995). A motion under MCR 2.116(C)(10) tests the factual basis underlying the plaintiff's claim. *Radtke v Everett,* 442 Mich 368, 374; 501 NW2d 155 (1993). A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence in favor of the party opposing the motion. *Id.* The court's task is to review the record evidence, and all reasonable inferences drawn from it, and decide whether a genuine issue regarding any material fact exists to warrant a trial. *Skinner v Square D Co,* 445 Mich 153, 161; 516 NW2d 475 (1994).

To establish a prima facie case of negligence, the plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. *Babula, supra,* p 48. Duty is any obligation that the defendant has to the plaintiff to avoid negligent conduct. *Simko v Blake,* 448 Mich 648, 655; 532 NW2d 842 (1995). In negligence actions, the existence of a duty is a question of law for the court. *Id.* In determining whether a duty exists, courts look to different variables, including: foreseeability of the harm, existence of a relationship between the parties involved, degree of certainty of injury, closeness of connection between the conduct and injury, moral blame attached to the conduct, policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach. *Buczkowski v McKay,* 441 Mich 96, 100-101; 490 NW2d 330 (1992); *Babula, supra,* p 49.

Defendant relies heavily on previous cases in which it was held that pharmacists generally are not liable for correctly filling a prescription. This Court has held that a pharmacist is held to a very high standard of care in filling prescriptions. When the pharmacist negligently supplies a drug other than the drug requested, the pharmacist is liable for the resulting harm to the purchaser. *Troppi v Scarf,* 31 Mich App 240, 245; 187 NW2d 511 (1971). In *Lemire v Garrard Drugs,* 95 Mich App 520, 526; 291 NW2d 103 (1980), this Court stated that "[i]t appears, as a general rule, that druggists are not liable for correctly filling a prescription." This statement, however, was made in the context of a successor liability case. This Court also based this proposition in the context of a

breach of warranty claim, citing 25 Am Jur 2d, Drugs, Narcotics, and Poisons, §§ 53-56, pp 328-332.

Further, a pharmacist has no duty to warn the patient of possible side effects of a prescribed medication where the prescription is proper on its face and neither the physician nor the manufacturer has required any warning to be given to the patient by the pharmacist. *Stebbins v Concord Wrigley Drugs, Inc,* 164 Mich App 204, 218; 416 NW2d 381 (1987). This Court, however, specifically reserved consideration of a pharmacist's liability in situations where the pharmacist knows of a particular patient's unique problems or where a pharmacist fills two incompatible prescriptions. *Id.*

A pharmacist does owe to a customer a duty to properly fill a legal prescription. *Adkins v Mong,* 168 Mich App 726, 729; 425 NW2d 151 (1988). In *Adkins,* this Court stated that the pharmacy had no duty to warn the plaintiff of the potential side effects of the substances it was dispensing to the plaintiff in accordance with the prescriptions submitted where those prescriptions were all valid on their face. This Court held that the plaintiff failed to state a claim against the pharmacy because there is no legal duty on the part of a pharmacist to monitor and intervene in a customer's reliance on drugs prescribed by a licensed treating physician. *Id.,* pp 728-729, 732.

A pharmacist also does not owe a duty to a customer to monitor drug usage. *Kintigh v Abbott Pharmacy,* 200 Mich App 92, 94; 503 NW2d 657 (1993). In *Kintigh,* it was held that the pharmacists owed no duty to the plaintiff to discover his addicted status. Failing knowledge of his addicted status, the pharmacists owed no duty to refuse to sell a Schedule V, nonprescription drug to the plaintiff. *Id.*

Thus, a review of previous cases in Michigan reveals that they are not dispositive of the issue presented in this case. In fact, this Court in *Stebbins* specifically reserved consideration of the scope of liability of a pharmacist where the pharmacist fills two incompatible prescriptions. Rather, it is plaintiff's contention that defendant voluntarily assumed a duty in this case because of the implementation and use of its computer system known as Arbortech Plus. Courts have imposed a duty where a defendant voluntarily assumed a function that it was under no legal obligation to assume. *Sponkowski v Ingham Co Rd Comm*, 152 Mich App 123, 127; 393 NW2d 579 (1986); *Rhodes v United Jewish Charities of Detroit*, 184 Mich App 740, 743; 459 NW2d 44 (1990); *Terrell v LBJ Electronics*, 188 Mich App 717, 720; 470 NW2d 98 (1991); *Holland v Leidel*, 197 Mich App 60, 64-65; 494 NW2d 772 (1992); *Babula, supra*, pp 50-51. Plaintiff has presented evidence that defendant implemented, used, and advertised through the media that it used, the Arbortech Plus computer system to monitor its customers' medication profiles for adverse drug interactions. Defendant has advertised that its Arbortech Plus computer system was designed in part to detect harmful drug interactions.[1] Therefore, defendant voluntarily assumed a

---

[1] The following are examples of defendant's commercials advertising its Arbortech Plus system:

This prescription drug called Coumadin is an anticoagulant. And this is Micronase, a drug prescribed for diabetes. Both are quite effective. But it could be very dangerous if you were taking both at the same time. How can you avoid harmful drug interactions? Simple. Get your prescription filled at Arbor Drugs where Arbortech Plus provides your Arbor pharmacist with your complete medication history, so we're aware of any possible medication interactions. Arbortech Plus. You can't get any better.

\* \* \*

duty of care when it implemented the Arbortech Plus system and then advertised that this system would detect harmful drug interactions for its customers.

Accordingly, we hold that defendant voluntarily assumed a duty to utilize the Arbortech Plus computer technology with due care. The trial court erred in concluding that defendant owed no duty to plaintiff's decedent in this case and erred in granting summary disposition in defendant's favor on this basis.

II

Plaintiff next argues that the trial court erred in granting summary disposition of her claim under the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.*

Specifically, plaintiff alleges that defendant violated the following provisions of the MCPA:

(1) Unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce are unlawful and are defined as follows:

This prescription drug called Dilantin is an anti-convulsant. And this is Tagamet, used for treating ulcers. Both are very effective, but there could be complications if you were taking both at the same time. How can you avoid unwanted drug interactions? Simple. Get your prescription filled at Arbor Drugs where Arbortech Plus provides your Arbor pharmacist with your complete medication history, so we're aware of any possible medication interactions. Arbortech Plus. You can't get any better.

* * *

Do you know what happens when you bring your prescription to Arbor Drugs? First, it's checked for insurance coverage and screened for possible drug interactions and therapeutic duplication. That's done very quickly by the Arbortech Plus computer. Then your prescription is filled and labelled. That's done very carefully, by your Arbor pharmacist. The bottom line? Your prescription is not just filled quickly, it's filled safely. Only at the Arbor Pharmacies. You can't get any better.

* * *

(c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has sponsorship, approval, status, affiliation, or connection which he or she does not have.

* * *

(e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

* * *

(g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented. [MCL 445.903; MSA 19.418(3)].

Defendant advertised that its Arbortech Plus computer system would prevent the type of drug incompatibility that occurred in this case. Therefore, reasonable minds could differ regarding whether defendant violated § 3(1)(c), (e), and (g) of the MCPA. A reasonable jury could find that the Arbortech Plus computer system was to have made information available to the pharmacist to prevent the drug interaction, but that it did not do so. Further, the jury could find that decedent reasonably relied on the allegedly false representation and that his stroke occurred as a result of this reliance. *Mayhall v A H Pond Co, Inc,* 129 Mich App 178, 183-185; 341 NW2d 268 (1983).

We do not agree with defendant that it is exempt from the MCPA because it is governed by a regulatory board, the Michigan Board of Pharmacy. It is true that the MCPA does not apply to a transaction or conduct specifically authorized under laws administered by a regulatory board or officer. MCL 445.904(1)(a); MSA 19.418(4)(1)(a). This

exemption does not apply in this case because the alleged violative conduct falls outside the realm of the regulatory commission. *Attorney General v Diamond Mortgage Co,* 414 Mich 603, 617; 327 NW2d 805 (1982). Here, plaintiff is claiming that defendant's advertising of its Arbortech Plus computer system violates the MCPA. Advertising is not within the purview of the Pharmacy Board's regulatory powers. See MCL 333.17722; MSA 14.15(17722). Therefore, plaintiff's claim that defendant's advertising of its Arbortech Plus computer system violates the MCPA falls outside the realm of the regulatory commission and § 4(1)(a) of the MCPA does not apply.

Accordingly, plaintiff has stated a claim under the MCPA. Further, reasonable minds could differ regarding whether defendant's conduct violated those provisions under the MCPA. The trial court erred in granting defendant summary disposition of the claim under the MCPA.

III

Last, plaintiff argues that the trial court erred in granting summary disposition of her fraud claim.

In order to show fraud or misrepresentation, plaintiff must prove: (1) that defendant made a material representation; (2) that the representation was false; (3) when defendant made the representation, defendant knew that it was false, or made it recklessly without knowledge of its truth or falsity; (4) that defendant made it with the intent that plaintiff would act upon it; (5) that plaintiff acted in reliance upon it; and (6) that plaintiff suffered injury. *Hi-Way Motor Co v Int'l Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976). An action for fraudulent misrepresentation

must be predicated on a statement relating to a past or an existing fact. *Id.* Future promises are contractual and cannot constitute actionable fraud. *Id.*

Defendant, through its advertising, asserted that its Arbortech Plus system would provide the pharmacist with information to prevent harmful drug interactions. Plaintiff has presented evidence that this was a material misrepresentation because the Arbortech Plus system failed to inform the pharmacist in this case of the contraindication of ingesting Tavist-D and Parnate at the same time. There is also evidence that defendant made the representation recklessly without knowledge of its truth or falsity because the drug interaction probably had been overridden on the computer system. Thus, defendant's representation that the Arbortech Plus system would detect the harmful drug interaction was false in this case.

There is also evidence that the representation was false when it was made. Defendant engaged in a national advertisement program, through the media, concerning the Arbortech Plus program at the time that decedent purchased Parnate and Tavist-D. Also, Samia Hamway-Essaili, Serafim's supervisor, stated at her deposition that the Arbortech Plus system was newly implemented at the time of decedent's purchases. According to Hamway-Essaili, the Arbortech Plus system was very new, the system was still in the process of being tested, and the system was not yet completed. Under these circumstances, a trier of fact could reasonably conclude that at the time that defendant made the representations concerning the Arbortech Plus program (that the program would detect harmful drug interactions), such a representation was at least made recklessly without knowledge of its truth.

There is also evidence that defendant made the representation with the intent that plaintiff's decedent would rely on it. Clearly, a reasonable juror could find that defendant's advertisements were made to induce customers to utilize its pharmacy. A reasonable juror could also find that decedent did rely on the representation because he was well aware of the adverse reactions that Parnate could induce if taken with certain other medications and he had had his prescription filled at the same Arbor Drugs store for over a year. Indeed, plaintiff testified at her deposition that decedent was aware not to take certain cold medications with Parnate, that decedent twice told Dr. Tomashevski that he had to be careful concerning what medications he took because he was taking Parnate, that they only used the Arbor Drugs store located near them for prescriptions, and that she liked the idea the defendant had their records on a computer. We believe that a jury could reasonably infer from this evidence that decedent relied on the advertising to utilize the Arbortech Plus system.

Finally, it is without question that decedent suffered injury because he suffered a stroke due to the adverse drug interaction between Parnate and Tavist-D.

Accordingly, plaintiff has presented evidence of each element of her claim of fraud. The trial court erred in granting summary disposition in defendant's favor with regard to the claim of fraud.

Reversed and remanded for further proceedings.