DOSHI v MICHIGAN BASIC PROPERTY INSURANCE ASSOCIATION

Docket No. 196003. Submitted December 9, 1997, at Detroit. Decided May 12, 1998, at 9:05 A.M. Leave to appeal sought.

Kandarp Doshi brought an action in the Wayne Circuit Court against Michigan Basic Property Insurance Association, seeking payment under an insurance policy after the defendant refused to pay the plaintiff's claim for fire damage to the plaintiff's motel. The defendant sought summary disposition, contending that the plaintiff failed to state a cause of action because at the time of the loss the policy had been canceled by National Premium Budget Plan (NPBP), for nonpayment of a monthly premium payment, pursuant to a power of attorney given NPBP in a premium finance agreement between the plaintiff and NPBP. The defendant also alleged that there was no dispute of fact because NPBP had followed the statutory requirements necessary to cancel the policy before the fire. The plaintiff also sought summary disposition, claiming that the law requires the insurance company to take action in addition to that of the premium finance company to cancel a policy and that, because the defendant did not issue a cancellation notice until after the fire, coverage was still in effect when the fire occurred. The court, Cynthia D. Stephens, J., granted summary disposition in favor of the plaintiff, finding that cancellation initiated by a premium finance company pursuant to the statute regarding cancellation by a premium finance company, MCL 500.1511; MSA 24.11511, is effective only after the requirements of both § 1511 and MCL 500.3020; MSA 24.13020, governing cancellation by an insurer, have been met. The court found that the defendant did not meet the requirement of § 3020 that it mail the plaintiff a cancellation notice until after the fire occurred. The defendant appealed.

The Court of Appeals *held*:

1. Cancellation of an insurance contract by an independent premium finance company may be effectuated in the manner set forth in § 1511.

2. Section 1511 does not make cancellation pursuant to § 1511 contingent upon the insurer's issuance of a cancellation pursuant to the method for cancellation for insurers contained in § 3020. The court erred in concluding that cancellation initiated by an indepen-

dent premium finance company may be effective only after the requirements of both § 1511 and § 3020 are met.

3. Cancellation is effective at the date and time stated on the independent premium finance company's notice of cancellation where the company meets the requisites of § 1511. Here, the actions of NPBP, an independent premium finance company, were sufficient under § 1511 to effect cancellation of the policy before the date of the fire. The order granting summary disposition to the plaintiff must be reversed and the matter must be remanded for entry of a judgment in favor of the defendant.

Reversed and remanded.

MCDONALD, P.J., dissenting, stated that the trial court properly found that the insurer must comply with the notice requirement of § 3020 in order for an independent premium finance company's request for cancellation under § 1511 to be effective. The court properly granted summary disposition for the plaintiff because the policy was not effectively canceled in accordance with § 3020 on the date of the loss. Even if the independent insurance agency where the plaintiff applied for the insurance and executed the premium finance agreement waived objection to the cancellation or ratified the cancellation when the agency negotiated and cashed the premium refund checks from NPBP, the plaintiff is not bound by the insurance agency's actions because they exceeded the scope of the agency.

INSURANCE — PREMIUM FINANCE COMPANIES — CANCELLATION.

Section 1511 of the Insurance Code is intended to delineate a clear separation between the method of cancellation of an insurance policy to be used by a premium finance company and the method of cancellation of a casualty insurance policy to be used by insurers stated in § 3020 of the code; where the requisites of § 1511 have been met by an independent premium finance company, cancellation is effective at the time stated on the finance company's notice of cancellation and the cancellation is not contingent upon the insurer's issuance of a notice of cancellation pursuant to § 3020 (MCL 500.1511, 500.3020; MSA 24.11511, 24.13020).

*Melamed & Dailey, P.C.* (by *Mark L. Dailey*), for the plaintiff.

*Morrison, Mahoney & Miller* (by *Charles R. Tuffley* and *Jeffrey R. Learned*), for the defendant.

Before: MCDONALD, P.J., and SAAD and SMOLENSKI, JJ.

SAAD, J.

I

NATURE OF THE CASE

In this insurance coverage matter, the parties dispute whether the casualty insurance policy covering plaintiff's motel was effectively canceled before a fire that seriously damaged the building. The trial court found that the cancellation was not effective until after the fire occurred, and rendered summary disposition for plaintiff on that basis. Because we hold that the trial court misread the relevant statute, we reverse.

II

FACTS AND PROCEEDINGS BELOW

On February 4, 1994, plaintiff Kandarp Doshi went to the Jackson Park Agency and completed an application for property insurance on his motel property. Doshi also executed a premium finance agreement with National Premium Budget Plan (NPBP), so that he could finance the premiums owed to defendant Michigan Basic Property Insurance Association. The NPBP premium finance agreement contained the following power of attorney:

> As long as I owe money on the loan, I give N.P.B.P. full and irrevocable POWER OF ATTORNEY *to cancel the insurance policies financed by this loan* if I fail to pay any monthly payment when due. This POWER OF ATTORNEY may not be revoked by me. [Emphasis added.]

The total annual premium payable to defendant was $2,928. Plaintiff paid defendant $732 in cash and financed the $2,196 balance through NPBP. Plaintiff's monthly payments to NPBP of $257.39 were due beginning March 5, 1994. However, plaintiff failed to make

the first monthly premium payment to NPBP on March 5, 1994, and on March 15, 1994, NPBP mailed plaintiff a ten-day notice of intent to cancel.[1] On March 30, 1994, NPBP mailed to both plaintiff and defendant NPBP's standard notice of cancellation, which stated that the policy would be canceled effective the next day, March 31, 1994.

Five days later, on April 5, 1994, the motel property at issue was damaged by fire. Defendant insurer mailed plaintiff a cancellation notice, dated April 13, 1994, which stated that the effective date of cancellation was March 31, 1994. After defendant refused to pay plaintiff's claim,[2] plaintiff filed this action alleging breach of contract, consequential damages, and unfair trade practices under the Michigan Consumer Protection Act, MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.*

Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10), contending that (1) plaintiff failed to state a cause of action because at the time of loss, the insurance policy had been canceled, and (2) there was no dispute of fact because NPBP had followed the statutory requirements necessary to cancel the policy, effective March 31, 1994.

Plaintiff also moved for summary disposition, pursuant to MCR 2.116(C)(9) and (10), contending that Michigan law requires the *insurance company*, not the premium finance company, to take additional action to cancel a policy, and that because the insurance company did not issue a cancellation notice

---

[1] Plaintiff denies ever receiving this ten-day notice.

[2] On April 20, 1994, NPBP mailed two checks to the Jackson Park Agency—the checks represented the return of that portion of the initial payment that had not yet been applied to the coverage.

until April 13, 1994 (after the fire), coverage was still in effect on April 5, 1994, when the fire occurred.

The trial court granted summary disposition for plaintiff, concluding that the fact that plaintiff signed a contract giving the finance company power of attorney did not relieve the insurance company of what the circuit court saw as the insurer's obligation to cancel the policy in the manner set forth in the relevant statute. Defendant now appeals, raising two primary issues. Because we find defendant's first issue dispositive, we reverse on that basis and do not reach the second issue.

### III

### ANALYSIS

Under the Michigan statutory scheme, there are three ways that a policy of *casualty* insurance may be canceled: by the insured, by the insurer, and by a premium finance company. Although this dispute centers on whether NPBP met the requirements for cancellation by a premium finance company, we review each of the three methods of cancellation.

Subsections a and b of subsection 1 of § 3020 of the Insurance Code, MCL 500.3020(1)(a) and (b); MSA 24.13020(1)(a) and (b), which govern cancellation of casualty insurance[3] by the insured and the insurer, provide:

> (a) That the policy may be canceled at any time at the request of the insured, in which case the insurer shall refund the excess of paid premium or assessment above the pro rata rates for the expired time . . . .

---

[3] This statute, by its terms, is limited to casualty insurance and therefore does not apply to life insurance or disability insurance, and so forth.

(b) That the policy may be canceled at any time by the insurer by mailing to the insured at the insured's address last known to the insurer or an authorized agent of the insurer, with postage fully prepaid, a not less than 10 days' written notice of cancellation with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time.

Cancellation of an insurance contract by a *premium finance company* may be effectuated in the manner set forth in MCL 500.1511; MSA 24.11511, which provides in pertinent part:

(1) When a premium finance agreement empowers the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be canceled by the premium finance company unless such cancellation is effectuated in accordance with this section.

(2) Not less than 10 days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within the 10-day period.

(3) After expiration of the 10-day period, the premium finance company may request cancellation of the insurance contract by mailing to the insurer a notice of cancellation, and the insurance contract shall be cancelled [sic] by the insurer without requiring the return of the insurance contract. The premium finance company shall also mail a notice of cancellation to the insured at his last known address at the same time the premium finance company requests cancellation of the insurance contract.

We review de novo summary disposition rulings. *Baker v Arbor Drugs, Inc,* 215 Mich App 198, 202; 544 NW2d 727 (1996). Statutory interpretation is a question of law and is reviewed de novo on appeal. *Nat'l Center for Mfg Sciences, Inc v Ann Arbor,* 221 Mich App 541, 545; 563 NW2d 65 (1997). The primary goal

of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. *Id.* To determine the intent of the Legislature it is necessary to examine the specific language of a statute; if the language is clear and unambiguous, then judicial construction is neither required nor permitted. *Id.* at 545-546.

Here, we are called upon to determine whether the actions of NPBP (a premium finance company) were sufficient under the statutory scheme to effect cancellation of the policy as of March 31, 1994. Under § 1511, each of several steps is necessary to effectuate cancellation. First, under subsection 1511(1), a premium finance company may request cancellation of a contract only if it has been given that power from the insured. The parties do not dispute that this power was given here, in the form of the power of attorney signed by Doshi. Under subsection 1511(2), the premium finance company must send a ten-day written notice to the insured, stating that the contract will be canceled unless the default is cured. Although plaintiff denied *receiving* this notice, there is no evidence that NPBP did not *send* the notice as it claimed on March 15, 1994. Under subsection 1511(3), after the ten-day period has expired, the finance company can request cancellation of the contract by mailing to both the insurer *and* the insured a request for cancellation, and these actions by the finance company dictate that "the insurance contract shall be cancelled by the insurer without requiring the return of the insurance contract." Here, it is undisputed that, on March 30, 1994, NPBP sent its standard notice of cancellation, which stated:

YOU ARE HEREBY NOTIFIED THAT THE POLICY DESCRIBED BELOW IS CANCELLED FOR NON-PAYMENT OF AN INSTALLMENT IN ACCORDANCE WITH THE CONDITIONS AND TERMS OF THE PREMIUM FINANCE AGREEMENT WHICH INCORPORATES A POWER OF ATTORNEY. THIS CANCELLATION IS EFFECTIVE ONE DAY AFTER THE ABOVE-CAPTIONED DATE [3-30-94], AT THE HOUR INDICATED IN THE POLICY AS THE EFFECTIVE TIME.

SECTION 1511(3) OF CHAPTER 15 OF ACT NO. 218 OF THE PUBLIC ACTS OF 1956, AS AMENDED, RECOGNIZES THIS AS A VALID NOTICE OF CANCELLATION AND PROVIDES THAT THE GROSS UNEARNED PREMIUM BE RETURNED TO THE PREMIUM FINANCE COMPANY.

IF THE POLICY OR ANY STATUTE REQUIRES THE INSURER TO GIVE NOTICE TO A MORTGAGEE, GOVERNMENTAL AGENCY, OR OTHER THIRD PARTY BEFORE THE POLICY CAN BE CANCELLED, THE INSURER SHALL GIVE THE PRESCRIBED NOTICE IN [SIC] BEHALF OF ITSELF OR THE INSURED TO ANY GOVERNMENTAL AGENCY, MORTGAGEE, OR OTHER THIRD PARTY ON OR BEFORE THE SECOND BUSINESS DAY AFTER THE DAY IT RECEIVES THE NOTICE OF CANCELLATION FROM THE PREMIUM FINANCE COMPANY AND SHALL DETERMINE THE EFFECTIVE DATE OF CANCELLATION TAKING INTO CONSIDERATION THE NUMBER OF DAYS NOTICE REQUIRED TO COMPLETE THE CANCELLATION.

*Importantly, there is nothing in § 1511 that makes cancellation contingent upon the insurer's issuance of a cancellation.* Therefore, under the clear language of the statute, NPBP's actions alone were sufficient to effectuate cancellation of the policy as of March 31, 1994.

That this result accurately reflects the intent of our Legislature is supported by the discussion in *Farmers Ins Group v Progressive Casualty Ins Co*, 84 Mich App 474, 482-483; 269 NW2d 647 (1978). In *Farmers*, the premium finance company was located at the same address as the insurer, and the premium finance agreement was "part and parcel" of the insurance contract. *Id.* at 477. We stated there at 482-483:

> Chapter 15 [including § 1511] of the insurance code was
> intended to exempt from the notice requirement of § 3020
> of the insurance code a premium finance company which
> was truly independent of any single insurer or group of
> affiliated insurers. If a premium finance company is not
> independent, but rather is effectively an extension or a
> branch of the insurer or affiliated insurers, the exemption
> would not and should not apply. If, as appears here, a pre-
> mium finance company is simply a division within the insur-
> ance company itself to handle periodic payments of insur-
> ance premiums, then the cancellation effected by the
> finance company is actually effected by the insurer itself,
> and the provisions of § 3020 [cancellation by insurer] would
> then apply. In that situation, even if the insured had con-
> tractually assigned to the premium finance company his
> right to cancel, the assignment would be in reality an
> assignment to the insurer, and could not be exercised
> peremptorily by the insurer because of the contrary require-
> ments of § 3020.

From this discussion, it is evident that the Legisla-
ture intended § 1511 to delineate a clear separation
between the method of cancellation by premium
finance companies and the method of cancellation in
§ 3020 for insurers. (Section 1511 "was intended to
exempt from the notice requirement of § 3020 . . . a
premium finance company . . . ." *Farmers Ins*, at
482.) We find absolutely no support for the trial
court's conclusion that cancellation initiated by a pre-
mium finance company can only be effective after the
requirements of *both* § 1511 (premium finance com-
pany) *and* § 3020 (insurer) are met. To the contrary,
where, as here, the requisites of § 1511 have been met
by an independent premium finance company, cancel-
lation is effective at the date and time stated on the
finance company's notice of cancellation. Here, the
policy was canceled on March 31, 1994—before the

fire that occurred on April 5, 1994. Clearly, no coverage was in effect on the date of loss. Accordingly, the trial court's grant of summary disposition to plaintiff was erroneous. The order granting summary disposition must be reversed and the matter must be remanded with instructions to enter judgment in favor of defendant.

Reversed and remanded with instructions. We do not retain jurisdiction.

SMOLENSKI, J., concurred.

McDONALD, P.J., (*dissenting.*) I respectfully dissent. I would affirm the trial court's grant of summary disposition to plaintiff.

As the majority states, when this Court construes statutes our primary goal is to ascertain and give effect to legislative intent. *Nat'l Center for Mfg Sciences, Inc v Ann Arbor*, 221 Mich App 541, 545; 563 NW2d 65 (1997). The first step in determining legislative intent is the specific language of the statute. *Id.* at 545-546. If the language of a statute is clear and unambiguous, judicial construction is neither required nor permitted. *Id.*

I believe the plain language of MCL 500.1511; MSA 24.11511 requires a result contrary to that reached by the majority. The statute provides, in pertinent part:

> (3) After expiration of the 10-day period, the premium finance company may request cancellation of the insurance contract by mailing to the insurer a notice of cancellation, and *the insurance contract shall be cancelleda* [sic] *by the insurer* without requiring the return of the insurance contract. [Emphasis added.]

The statute plainly states the insurance contract is canceled by the insurer, although at the request of the premium finance company. Accordingly, I would hold that the insurer must comply with the notice requirement of MCL 500.3020; MSA 24.13020. I agree with the majority that this Court's discussion in *Farmers Ins Group v Progressive Casualty Ins Co*, 84 Mich App 474, 482-483; 269 NW2d 647 (1978), suggests otherwise. However, we are not bound by the discussion in *Farmers*. There, this Court held that where a premium finance company is not independent of the insurer, but is instead effectively an extension or a branch of the insurer, § 3020 is applicable. *Id.* This Court's comment that "[c]hapter 15 of the insurance code was intended to exempt from the notice requirement of § 3020 of the insurance code a premium finance company which was truly independent of any single insurer or group of affiliated insurers" was not necessary to the resolution of the issue in that case. Therefore, the comment is mere dictum and is not binding on this panel. *Phinney v Perlmutter*, 222 Mich App 513, 533; 564 NW2d 532 (1997).

In this case, it is undisputed that defendant did not mail any notice of cancellation until April 13, 1994. Therefore, the policy was not effectively canceled in accordance with § 3020 on the date of the loss, April 4, 1994. Accordingly, I would find the trial court properly granted summary disposition with regard to this issue.

I note defendant has cited numerous out-of-state cases in support of its position that an insurer should not be required to provide notice to the insured when a premium finance company requests cancellation of the insurance contract pursuant to a premium finance

agreement. However, generally the pertinent statutes of these states expressly provide that when the premium finance company requests cancellation of the insurance contract the insurer shall cancel the policy "as if the notice of cancellation had been submitted by the insured himself." See, e.g., *Bryce v St Paul Fire & Marine Ins Co*, 162 Ariz 307, 308; 783 P2d 246 (Ariz App, 1989); *Atwater v Dist of Columbia Dep't of Consumer & Regulatory Affairs*, 566 A2d 462, 470 (DC App, 1989). Michigan's statute does not contain this language; therefore, I do not find these authorities persuasive.

I must now turn to defendant's argument that when Jackson Park Agency negotiated and cashed the premium refund checks, it was acting as plaintiff's agent, thus its actions amounted to a waiver of objection to or ratification of the cancellation of the policy. I disagree.

Initially, I would find there are no issues of material fact regarding the scope of the agency. Ordinarily, an independent insurance agent is the agent of the insured, not the insurer. *Harwood v Auto-Owners Ins Co*, 211 Mich App 249, 254; 535 NW2d 207 (1995). Moreover, a principal is bound by the actions of an agent done within the scope of the agent's authority. *Hutton v Roberts*, 182 Mich App 153, 162; 451 NW2d 536 (1989). Generally, independent insurance agents are only considered the agent of the insured concerning matters immediately connected with the procurement of the policy. 43 Am Jur 2d, Insurance, § 110 pp 187-188; *Grace v American Central Ins Co of St Louis*, 109 US 278, 281; 3 S Ct 207; 27 L Ed 932 (1883). In this case, there was no evidence to suggest Jackson Park Agency was plaintiff's agent for any

other purpose except for procurement of the policy. Accordingly, I would find that even if Jackson Park Agency's actions amounted to a waiver or ratification, plaintiff is not bound by them because its actions exceeded the scope of the agency. Moreover, I agree with the trial court that in this case there was no cancellation to ratify at the time of the loss because the insurer had not complied with MCL 500.3020(1)(b); MSA 24.13020(1)(b). See *Beaumont v Commercial Casualty Ins Co*, 245 Mich 104, 107; 222 NW 100 (1928). Accordingly, I would find summary disposition was proper on this ground as well, and I would affirm the decision of the trial court.