*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIE GRIFFIN,

　　　　　　Plaintiff-Appellant,

v

TRUMBULL INSURANCE COMPANY and
MICHIGAN ASSIGNED CLAIMS PLAN,

　　　　　　Defendants-Appellees,

and

ALLSTATE INSURANCE COMPANY,
ESURANCE PROPERTY & CASUALTY
INSURANCE COMPANY, and JOHN DOE
INSURANCE COMPANY,

　　　　　　Defendants.

FOR PUBLICATION
September 24, 2020

No. 344272
Wayne Circuit Court
LC No. 17-006082-NF

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

RONAYNE KRAUSE, P.J. *(concurring in part and dissenting in part)*

The majority accurately and fairly recites the factual background in this matter and the general legal principles applicable to this matter, so I will not repeat them. Furthermore, I concur entirely with the majority's analysis and disposition of plaintiff's claims against the MACP. I respectfully disagree with some of the majority's analysis of *Frierson v West American Ins Co*, 261 Mich App 732; 683 NW2d 695 (2004), and I respectfully draw a different conclusion regarding plaintiff's diligence and whether Harleysville was "identifiable" within the meaning of the no-fault act. I would reverse the trial court's dismissal as to Trumbull, and under the circumstances I would decline to address the issue of sanctions without prejudice with the possibility of plaintiff raising the issue again on remand.

Initially, I agree with the majority that *Frierson* sets forth a conditional test: *if* a higher-priority insurer "cannot be identified," *then* the "default rule" regarding insurer priority applies. *Frierson*, 261 Mich App at 738. However, I disagree that *Frierson* provides any authority,

guidance, nor insight into what it means to be "identifiable." In *Frierson*, it was simply agreed by the parties that no higher-priority insurer could be identified. *Id.* at 737. No actual analysis was undertaken. Indeed, if the Court had addressed whether any party made adequate efforts to locate a higher-priority insurer, that analysis would have been dicta. Additionally, the Court in *Frierson* was faced with a question of whether the injured plaintiff's own insurer or the MACP[1] was liable for payment of benefits, *not* whether the plaintiff received benefits or received nothing. The holding in *Frierson* was based on the purpose of the no-fault act as described by our Supreme Court: to ensure that persons injured in motor vehicle accidents receive benefits, and to impose primary responsibility for paying those benefits on the person's own insurer by default. *Id.* at 737-738, citing *Parks v DAIIE*, 426 Mich 191, 204; 393 NW2d 833 (1986). *Frierson* did not create or identify an "absolute impossibility" standard, it merely applied longstanding legal principles to a situation in which identifying another insurer happened to be absolutely impossible.

"When interpreting the meaning of a statute, our primary goal is to discern the intent of the Legislature by first examining the plain language of the statute." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). However, the no-fault act does not expressly specify how to address situations in which a higher-priority insurer is presumed to exist but has not been identified. To the extent construction of a statute is necessary, we must strive "to prevent absurd results, injustice, or prejudice to the public interest." *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999). Any such construction must be consistent with the underlying legislative purpose of the no-fault act and must liberally favor "the persons who are its intended beneficiaries." *Frierson*, 261 Mich App at 734.

Our Supreme Court has explained that "[t]he no-fault act was intended to minimize uncertainties and to provide a relatively simple means of compensating those injured in automobile accidents." *Parks*, 426 Mich at 207. Furthermore, the no-fault act

> was offered as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system. The goal of the no-fault insurance system was to provide victims of motor vehicle accident assured, adequate, and prompt reparation for certain economic losses. [*Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978).]

The no-fault system was, in part, specifically designed to ensure prompt reimbursement to injured persons, especially those lacking in substantial financial means, and to avoid the need for litigation. *Id.* at 621-623.

Here, the majority crafts an "absolute impossibility" standard out of whole cloth. No such standard was created or applied in *Frierson*, and such a standard contravenes the purposes of the no-fault act. No-fault claimants are not required to prove that a higher-priority insurer is unavailable, and insurers of default priority may not delay or refuse to pay a claim. *Borgess Med*

---

[1] Strictly speaking, the MACP's predecessor, the Michigan Assigned Claims Facility.

*Ctr v Resto*, 273 Mich App 558, 568-576; 73 NW2d 738 (2007), vacated on other grounds and affirmed 482 Mich 946 (2008).[2] If any standard for determining when or how a higher-priority insurer "cannot be identified" is to be crafted, it would ideally come from the Legislature or from our Supreme Court. However, were this Court to create a standard nonetheless, it would be most consistent with the purposes of the no-fault act to require a claimant to exercise due diligence to look for a higher-priority insurer. The due diligence standard is a familiar one, and it "means undertaking reasonable, good-faith measures under the circumstances, not necessarily everything possible." *Ickes v Korte*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 346490, slip op at p 4). Such a standard would at least not undermine the purposes of the no-fault act.

That being said, Trumbull argues that plaintiff could have done more to identify Gonzalez's insurer. That is true. However, it is almost always true under any circumstance. Thus, diligence is not evaluated based on whether a person could have done more, but rather whether that person did enough. *Ickes*, ___ Mich App at ___ n 2 (slip op at p 4). Plaintiff points out that any costs invested into discovering Gonzalez's insurer would be costs not recoupable from any benefits ultimately paid. I agree with plaintiff that the goals of the no-fault act would be thwarted by requiring claimants to expend a significant portion of their benefits simply seeking to obtain those benefits in the first place.

Furthermore, Trumbull conducted its own search for a higher-priority insurer. I do not wish to suggest that Trumbull either was or was not obligated to undertake that search. Nevertheless, presuming Trumbull had no such obligation, a party that acts gratuitously must still act non-negligently. *Hart v Ludwig*, 347 Mich 559, 563-565; 79 NW2d 895 (1956). Under the circumstances, the relationship between an insured and his own insurer imposed upon Trumbull a requirement to carry out that investigation competently and thoroughly. See *Hill v Sears, Roebuck and Co*, 492 Mich 651, 660-661; 822 NW2d 190 (2012); see also *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 205-206; 544 NW2d 727 (1996). Trumbull's assumed obligation means its

_____

[2] Our Supreme Court vacated the majority opinion in *Borgess* but nevertheless affirmed this Court "for the reasons stated in the concurring opinion." The concurring opinion disagreed with the majority as to a single issue: whether there was a legal distinction between a "claimant" and a "person suffering accidental bodily injury" under MCL 500.3114(4). *Borgess*, 273 Mich App at 585 (WHITE, J., concurring). That distinction had been cited by the majority as only one alternative basis for its holding. *Id*. at 571-572. Peremptory orders from our Supreme Court constitute binding precedent to the extent they can be understood, even if only by reference to other opinions. *Woodring v Phoenix*, 325 Mich App 108, 115; 923 NW2d 607 (2018). By necessary implication, our Supreme Court left intact the *Borgess* majority's holding, with which the concurrence clearly agreed, that it would contravene the purpose of the no-fault act and settled caselaw for an injured person's own insurer, i.e., the insurer of default priority, to refuse to pay benefits because the claimant had not disproved the availability of a higher-priority insurer. *Borgess*, 273 Mich App at 572-573. I would agree with the *Borgess* majority in any event, but even if I did not, I conclude that we are bound to follow it by MCR 7.215(C)(2) and MCR 7.215(J)(1). The majority accurately observes that there was no discussion in *Borgess* of whether a higher-priority insurer could have been identified, but based on its conclusion that the claimant was not obligated to do so, no such discussion would have been warranted and has no relevance.

inability to identify Harleysville should be conclusive as to whether Harleysville *was* able to be identified as of one year from the accident. It is not clear whether Trumbull specifically informed plaintiff that it was searching for a higher-priority insurer, but it did promptly advise plaintiff that it was investigating his claim for coverage, and it apparently told plaintiff at some point before the suit was commenced that it had not been able to find a higher-priority insurer. Any reasonable person would be expected to place some reliance on that investigation, and that reliance does not display a lack of diligence.

Trumbull accurately notes that if plaintiff had commenced the instant lawsuit earlier, he would have gained the power of subpoena. Indeed, when Gonzalez was eventually subpoenaed, Harleysville was rapidly identified. It is somewhat speculative whether Gonzalez would have responded to an earlier subpoena, given his apparent refusal to discuss the matter with anyone while he was still employed by the same employer. More importantly, however, Trumbull's argument contravenes the purpose of the no-fault act. Creating a duty for injured persons to commence suit against their own insurer immediately after an accident as a matter of course will drastically increase litigation and costs to injured persons and insurers, obliterate any hope of fulfilling the no-fault act's purpose of making benefit payments simple and straightforward, usurp the Legislature's power to create limitations periods, clog court dockets, and otherwise re-create problems the no-fault act was intended to solve. It is blatantly against public policy to hold it against a party for failing to seek litigation as a first resort or failing to file a suit earlier when it was actually timely.

I would hold that to the extent plaintiff was obligated to search for a higher-priority insurer as a precondition to receiving no-fault benefits from his insurer of default priority, plaintiff exercised the requisite due diligence in carrying out that search. I would therefore reverse the dismissal of plaintiff's claims against Trumbull.

/s/ Amy Ronayne Krause