*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MINETTE BLAKE, ORETHIA BLAKE,
LEIGHTON CLARK, JANICE DEPOY, ALLESHA
COOPER, and TAMLA GRAY,

        Plaintiffs-Appellants,

v

WALMART STORES, INC., and WAL MART
STORES EAST,

        Defendants,

and

BELLE TIRE DISTRIBUTORS, INC.,

        Defendant-Appellee.

UNPUBLISHED
March 23, 2023

No. 359323
Muskegon Circuit Court
LC No. 19-004715-NO

Before: K. F. KELLY, P.J., and BOONSTRA and REDFORD, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendant Belle Tire Distributors, Inc. (Belle Tire).[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On April 3, 2017, plaintiff Minette Blake (Minette)[2] was driving her 2007 Toyota Sienna minivan west on Interstate 96. The remaining plaintiffs were passengers in the van. The van's

---

[1] Defendants Walmart Stores, Inc., and Wal Mart Stores East (collectively, Walmart) settled with plaintiffs and were ultimately dismissed from the case. They are not parties to this appeal.

[2] Some of the individuals involved in this case are related and have the same last name. As a result, we will refer to these individuals by their first names.

right rear tire "delaminated," meaning that the inner and outer components of the tire separated, causing Minette to lose control of the van and crash. The occupants of the van suffered various injuries. No other vehicles were involved.

At Minette's deposition, she testified that she had purchased the van in Florida in September 2014. On February 27, 2017, Minette was driving the van home from work, and it felt "wobbly," "unbalanced," and was leaning to the right. She pulled over and called a tow truck. She had the van towed to the Belle Tire shop in Muskegon. When she picked up the van, the customer-service representative at Belle Tire told her that the van needed "a balance" and that the mechanic had performed an alignment. She drove the van away from Belle Tire and did not notice any issues.

About a week later, Minette experienced the same issues with the van, and brought it back to Belle Tire on March 4, 2017. The customer-service representative told her that the alignment was checked on the van and that it was okay. She was not charged for the service. Minette drove the van away from Belle Tire and did not experience any further issues. She never brought the van back to Belle Tire. On April 1, 2017, Minette took the van to Walmart for an oil change. She stated at her deposition that she asked Walmart service personnel to check the tires because she was taking a long trip to the airport in Detroit. She testified that she was told that her tires were fine. The accident occurred while Minette was driving back from Detroit.

Plaintiff's expert witnesses, William Woehrle and William Zembower, asserted that the tire had failed as the result of a manufacturing defect. Both Woehrle and Zembower opined that the defect in the tire would have been visible to anyone providing service to the vehicle. On the other hand, the defense expert, Norris Tennent, concluded that the accident had been caused by an improper patch on the right rear tire,[3] in addition to impact damage caused by the tire striking an unknown object.

Plaintiffs filed a complaint against Walmart and Belle Tire, alleging with regard to Belle Tire that it was negligent in failing to inform Minette that the van's right rear tire was in a hazardous condition and needed to be replaced. Belle Tire moved for summary disposition under MCR 2.116(C)(10) on three grounds: (1) Belle Tire did not owe a legal duty to alert Minette to a hazard in the right rear tire; (2) even if there was a duty, no reasonable jury could conclude that Belle Tire had breached that duty because no one recovered the portion of the tire tread that allegedly contained the indicators of a defect, and plaintiffs' expert testimony about what should have been visible to Belle Tire was merely speculation and conjecture; and (3) there was no genuine issue of material fact that it was Minette's steering—not any action or inaction by Belle Tire—that proximately caused the accident. In a written opinion and order, the trial court agreed that plaintiffs had failed to establish that Belle Tire owed a legal duty. The court granted the motion for summary disposition and dismissed the case.

This appeal followed.

---

[3] Plaintiffs' experts agreed that the tire was improperly patched but opined that the improper patch did not have anything to do with the accident.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001). When reviewing a motion brought under MCR 2.116(C)(10), this Court "must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence in favor of the party opposing the motion." *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). This Court's "task is to review the record evidence, and all reasonable inferences drawn from it, and decide whether a genuine issue regarding any material fact exists to warrant a trial." *Id*. A genuine issue of material fact exists when the record, "giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ." *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997). However, the court may not "assess credibility" or "determine facts on a motion for summary [disposition]." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). Whether a defendant owes a plaintiff a duty is a question of law that this Court reviews de novo. *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004).

## III. ANALYSIS

Plaintiffs argue that the trial court erred by concluding that Belle Tire did not owe a duty of care to discover the allegedly defective tire. We disagree.

"To establish a prima facie case of negligence, a plaintiff must prove that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Hill v Sears, Roebuck and Co*, 492 Mich 651, 660; 822 NW2d 190 (2012) (quotation marks and citation omitted). "It is axiomatic that there can be no tort liability unless" the defendant owed a duty to the plaintiff. *Id*. (quotation marks and citation omitted). "Every person engaged in the performance of an undertaking has a duty to use due care or to not unreasonably endanger the person or property of others." *Id*. "Generally, the duty that arises when a person actively engages in certain conduct may arise from a statute, a contractual relationship, or by operation of the common law . . . ." *Id*. at 660-661.

The Michigan Supreme Court has explained that "accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract." *Fultz*, 470 Mich at 465. "In defining the contours of this common-law duty, our courts have drawn a distinction between misfeasance (action) and nonfeasance (inaction) for tort claims based on a defendant's contractual obligations. We have held that a tort action will not lie when based solely on the nonperformance of a contractual duty." *Id*. at 465-466; see also *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 498; 418 NW2d 381 (1988) (explaining that "[t]he common law has been slow in recognizing liability for nonfeasance because the courts are reluctant to force persons to help one another and because such conduct does not create a new risk of harm to a potential plaintiff").

"At common law, [t]he determination of whether a legal duty exists is a question of whether the relationship between the actor and the plaintiff gives rise to any legal obligation on the actor's part *to act* for the benefit of the subsequently injured person." *Hill*, 492 Mich at 661 (quotations

and citation omitted; alteration in original). "Factors relevant to the determination whether a legal duty exists include [the] relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Id*. (quotation marks and citation omitted).

Generally, "[c]ourts have imposed a duty where a defendant voluntarily assumed a function that it was under no legal obligation to assume." *Baker*, 215 Mich App at 205. In *Schanz v New Hampshire Ins Co*, 165 Mich App 395, 402; 418 NW2d 478 (1988), this Court cited 3 Restatement Torts, 2d, § 323, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

In this case, Minette acknowledged in her deposition that she did not contract with Belle Tire to inspect her tires for any and all issues; she contracted with Belle Tire to fix a specific issue, which appears to have been resolved by re-aligning her tires. Plaintiffs do not allege that Belle Tire failed to perform the alignment or that the alignment itself was negligently performed. Rather, plaintiffs argue that Belle Tire should have discovered the defective tire during the alignment service.

Minette did not ask Belle Tire to check her tires, she was not told that her tires were checked, and she was not charged for a tire inspection. As a result, Belle Tire was not under a contractual duty to check the van's tires for defects. To the extent that plaintiffs claim that Belle Tire failed to properly diagnose the problem that they had been hired to solve, because the issue was caused by the defective tire and not the alignment, Minette testified that she did not experience any issues with the van after the second service at Belle Tire; indeed, it was not established that the earlier wobbling and the tire's sudden delamination were related. Plaintiffs did not establish a genuine issue of material fact regarding whether Belle Tire breached its common-law duty to perform its contractual obligations non-negligently. *Fultz*, 470 Mich at 465.

Moreover, to the extent that Belle Tire voluntarily undertook an inspection of the tires, Belle Tire's alleged failure to discover the defect did not increase the risk of harm. According to plaintiffs' expert witnesses, the hazard—the defective tire—was in existence when Belle Tire performed the alignment and remained in existence after the service. There is no evidence that the alignment increased the risk of harm caused by the defective tire. See *Hill*, 492 Mich at 671 (holding that the installation of an electric dryer did not affect the nature of the hazard in any manner because the danger posed by the uncapped gas line was exactly the same before and after the dryer was installed). Moreover, Minette's deposition testimony does not indicate that she relied on any inspection of the tires by Belle Tire. To the contrary, she testified that she did not know whether Belle Tire inspected her tires. Moreover, the record shows that she specifically

contracted with Walmart to inspect her tires before her drive to Detroit, and that she was then told that the tires were fine.

Plaintiffs further assert that Belle Tire should have inspected the tires—and discovered the defect—because it rotated the van's tires. The parties' expert witnesses opined that, based on their physical observations of the van, the van's tires were rotated shortly before the accident. However, there is no evidence that *Belle Tire* ever in fact rotated the van's tires. Neither Belle Tire invoice mentions a tire rotation. Minette also denied that Belle Tire—or anyone else—had rotated the van's tires. Even if a tire rotation would give rise to a duty to inspect those tires, a vague allegation—that because the tires had recently been rotated, Belle Tire must have done it—without any additional support, is not enough to survive summary disposition in this case. See *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7-8; 890 NW2d 344 (2016) (explaining that MCR 2.116(C)(10) "plainly requires the adverse party to set forth specific facts at the time of the motion showing a genuine issue for trial"). Therefore, the trial court did not err when it concluded that Minette had failed to establish that Belle Tire owed a legal duty.

For the same reasons, plaintiffs have failed to establish that Belle Tire owed a duty to the van's other passengers. Belle Tire did not owe the passengers a duty that was separate from its obligations to Minette. See *Fultz*, 470 Mich at 467. Moreover, as already addressed, Belle Tire's failure to discover the defective tire did not increase the existing hazard or create a new hazard. See *id*. at 469.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra
/s/ James Robert Redford