SWAN v WEDGWOOD CHRISTIAN YOUTH AND FAMILY SERVICES, INC

Docket No. 200632. Submitted January 13, 1998, at Detroit. Decided June 5, 1998, at 9:10 A.M. Leave to appeal sought.

Harry Swan, as personal representative of the estate of Harry W. Swan, deceased, brought an action in the Kent Circuit Court against Wedgwood Christian Youth and Family Services, Inc., alleging that the defendant, which operates a secure residential program specializing in adolescents with serious emotional or behavioral problems, committed a breach of its duty to use reasonable care in the admission, treatment, and supervision of Clyde LaPalm, the sixteen-year-old son of the decedent's live-in girlfriend, by sending LaPalm home on an unsupervised visit, failing to ensure that LaPalm had an adequate amount of his prescription medication and would take it during the visit, and failing to take appropriate measures in response to a phone call from LaPalm's mother during the visit regarding LaPalm's behavior. The plaintiff claimed that the killing of Harry W. Swan by LaPalm during the visit was proximately caused by the defendant's negligence. The court, Paul J. Sullivan, J., granted summary disposition in favor of the defendant, finding that, although the defendant owed a duty of reasonable care to LaPalm, it owed no duty to unknown third parties such as the decedent. The plaintiff appealed.

The Court of Appeals *held*:

1. MCL 330.1946; MSA 14.800(946) limits the duty a mental health professional owes to third persons such as the plaintiff's decedent. Under the statute, the only duty owed is a duty to warn in those situations where a patient communicates a threat of physical violence and the object of the threat is reasonably identifiable. Here, LaPalm had communicated no threat against the decedent or any other third party. The defendant owed no duty to warn or protect the decedent under the terms of the statute.

2. To the extent that the plaintiff alleges a breach of duties on the part of the defendant, those duties were owed to LaPalm, not the decedent. The plaintiff cannot claim the benefit of any alleged breach of duty to LaPalm.

3. The defendant had no common-law duty to warn or protect the decedent under the circumstances of this case.

4. The duty to warn imposed under the statute applies to the defendant, a corporate institution that undertakes to render psychological treatment.

Affirmed.

MENTAL HEALTH — NEGLIGENCE — DUTY TO WARN THIRD PARTIES — MENTAL HEALTH PROFESSIONALS — CORPORATE INSTITUTIONS.

MCL 330.1946; MSA 14.800(946) limits the duty a mental health professional owes to third parties to a duty to warn in those situations where a patient has communicated a threat of physical violence against a reasonably identifiable third person; the duty to warn imposed on a mental health professional under the act also applies to a corporate institution that undertakes to render psychological treatment.

*Messing, Palmer & Waibel, P.C.* (by *Charles W. Palmer*), for the plaintiff.

*Galbraith & Booms* (by *Steven B. Galbraith* and *Laura A. Phillips*), for the defendant.

Before: GAGE, P.J., and REILLY and JANSEN, JJ.

GAGE, P.J. Plaintiff appeals as of right the circuit court order granting summary disposition to defendant Wedgwood Christian Youth and Family Services, Inc. We affirm.

This case arises out of the killing of sixty-nine-year-old Harry Washington Swan by his live-in girlfriend's sixteen-year-old son, Clyde LaPalm. LaPalm had a long history of behavioral problems, including violent and assaultive conduct, self-mutilation, and several suicide attempts. He had been arrested six or more times for petty theft, grand theft, damaging property, and assault. On June 10, 1992, LaPalm was admitted to a psychiatric hospital after he took an overdose of the prescription drug Tegretol in an attempt to "get high." On June 29, 1992, he was the subject of juve-

nile proceedings arising out of charges of retail fraud, assault and battery, and malicious destruction of property. The probate court ordered that LaPalm continue as a temporary ward of the court and placed him in a juvenile detention center until July 8, 1992. On July 9, 1992, LaPalm was turned over to the county Community Mental Health Department (CMHD) for placement.

LaPalm was transferred to defendant's facility on July 16, 1992. Defendant ran a "secure residential program," which specialized in adolescents who had serious emotional or behavioral problems and were difficult to place. LaPalm's intake referral form noted his past placements that resulted from his aggressive conduct or destruction of property and indicated a history of "some assault." The consulting psychiatrist diagnosed La Palm with oppositional defiant disorder and bipolar disorder in full remission. Thereafter, an "Initial Service Plan" was prepared, which indicated that LaPalm was progressing well and had demonstrated a strong desire to complete treatment and resolve his inability to control his anger. The plan also stated that LaPalm's mother and the decedent, her live-in boyfriend, had visited him twice since his admission. Because those visits went well, LaPalm's mother and representatives from defendant and the CMHD agreed that LaPalm could visit his mother's home from August 21 through August 26.

LaPalm traveled by bus to visit his mother as planned on Friday, August 21, 1992. LaPalm testified in a deposition that on the evening of Sunday, August 23, he unsuccessfully tried to set fire to a truck and then a house using gasoline. Afterward, he went home and jumped out of a second floor window

because he was depressed and wanted to hurt himself. His mother called defendant's facility, and both she and LaPalm spoke to a youth treatment specialist about the incident. Defendant's employee did not believe that LaPalm required immediate psychiatric attention, and he and LaPalm agreed to discuss the incident further when LaPalm returned to Wedgwood.

Shortly after the telephone call, LaPalm went outside, poured gasoline over his head, and lit himself on fire. He put the fire out after a few moments and went back inside the house. The decedent told LaPalm to "calm down" and put his hand on LaPalm's shoulder. At that point, LaPalm began punching the decedent, and the decedent fell to the floor. LaPalm then dropped a microwave oven and a television on the decedent. According to the autopsy report, the decedent's immediate cause of death was blunt trauma to the head with massive underlying cerebral hemorrhage and contusion. LaPalm was charged with open murder and pleaded guilty but mentally ill to a charge of manslaughter. According to plaintiff, LaPalm is serving a ten- to fifteen-year sentence at a prison psychiatric hospital.

Plaintiff, the personal representative of the decedent's estate, subsequently brought this civil action claiming that defendant committed a breach of its duty to use reasonable care in the admission, treatment, and supervision of LaPalm by sending LaPalm home on an unsupervised visit, failing to take appropriate steps to insure the provision of an adequate amount of prescription medication for the visit, failing to take adequate steps to ensure that LaPalm would take the prescribed medication, and failing to take appropriate measures in response to the phone

call from LaPalm's mother on August 23, 1992. Plaintiff further claimed that defendant's negligence proximately caused the decedent's death. Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) on the basis of a failure to state a claim on which relief can be granted and MCR 2.116(C)(10) on the basis of a lack of factual issues to proceed to trial. The circuit court granted the motion and denied plaintiff's subsequent motion for rehearing.

Plaintiff now argues that the circuit court erred in granting summary disposition to defendant. The court concluded that while defendant owed a duty of reasonable care to LaPalm, it owed no duty to unknown third parties, such as the decedent. Plaintiff contends that defendant did owe a duty of reasonable care in supervising LaPalm's home visit. Plaintiff further argues that the circuit court erred in applying MCL 330.1946; MSA 14.800(946) to the present case and in holding that the statute barred plaintiff's claim against defendant.

This Court reviews a grant of summary disposition de novo. *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). Defendant brought its motion pursuant to both MCR 2.116(C)(8) and (10). The circuit court did not indicate under which subrule it granted summary disposition. However, because it appears that the court looked beyond the pleadings in making its determination, we will consider the motion granted pursuant to MCR 2.116(C)(10). A motion brought under MCR 2.116(C)(10) tests the factual support for the plaintiff's claim. *Id.* A court reviewing such a motion should review the record evidence and all reasonable inferences drawn from it and decide whether a genu-

ine issue regarding any material fact exists to warrant a trial. *Id.*

Plaintiff argued to the circuit court that the decedent was killed as a result of Wedgwood's negligence in caring for LaPalm. Plaintiff contended that defendant assumed parental responsibilities for LaPalm when it entered into a contract with the CMHD for LaPalm's care. Moreover, a special relationship existed between defendant and LaPalm because of LaPalm's status as a psychiatric patient. Plaintiff further contended that because of the special relationship, defendant had a duty to control LaPalm's behavior. Because it was foreseeable that defendant's negligence in treating LaPalm could result in harm to another, argued plaintiff, defendant owed a duty to the decedent and the grant of summary disposition was inappropriate.

To establish a prima facie case of negligence, the plaintiff must prove: (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached that duty, (3) that the defendant's breach of that duty was a proximate cause of the plaintiff's damages, and (4) that the plaintiff suffered damages. *Baker, supra* at 203. Duty is any obligation the defendant has to the plaintiff to avoid negligent conduct. *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995). The existence of a duty is a question of law for the court to decide. *Id.* In the landmark case on a psychiatrist's duty to third persons, *Tarasoff v Regents of Univ of California*, 17 Cal 3d 425; 131 Cal Rptr 14; 551 P2d 334 (1976), the California Supreme Court held that a psychiatrist owes a duty to use reasonable care to protect persons endangered by his patient. The holding in *Tarasoff* was based upon the common-law rule

of negligence that a person owes a duty to protect individuals from third persons when there is a special relationship with either the dangerous person or the potential victim.

In *Davis v Lhim*, 124 Mich App 291, 301; 335 NW2d 481 (1983), this Court adopted the *Tarasoff* reasoning and held that a psychiatrist owes a duty of reasonable care to a person who is foreseeably endangered by his patient. However, the Supreme Court reversed this decision on other grounds in *Canon v Thumudo*, 430 Mich 326; 422 NW2d 688 (1988), and the Court found that on the basis of its holding it did not need to decide whether a duty to warn should be imposed upon mental health professionals. In 1989, the Michigan Legislature sought to codify the holding set forth in *Tarasoff* in a "duty to warn" statute, MCL 330.1946; MSA 14.800(946),[1] which provides in pertinent part:

> (1) If a patient communicates to a mental health professional who is treating the patient a threat of physical violence against a reasonably identifiable third person and the recipient has the apparent intent and ability to carry out that threat in the foreseeable future, the mental health professional has a duty to take action as prescribed in subsection (2). Except as provided in this section, *a mental health professional does not have a duty to warn a third person*

---

[1] This statute has undergone two amendments since the occurrence in 1992 of the events that form the basis of plaintiff's complaint. Neither amendment provided any substantive changes to the original statute and would not alter our analysis or result. We quote the most recent amendment, which became effective March 28, 1996. This is the version relied upon by appellant in his brief. Moreover, amendments of statutes related to remedies or modes of procedure, which do not create new or take away vested rights, but operate only in furtherance of a remedy or confirmation of rights already existing, are held to operate retrospectively unless a different intention is clear. *People v Russo*, 439 Mich 584, 594; 487 NW2d 698 (1992); *Detroit v Walker*, 445 Mich 682, 704; 520 NW2d 135 (1994).

*of a threat as described in this subsection or to protect the third person.*

(2) A mental health professional has discharged the duty created under subsection (1) if the mental health professional, subsequent to the threat, does 1 or more of the following in a timely manner:

(a) Hospitalizes the patient or initiates proceedings to hospitalize the patient under chapter 4 or 4a.

(b) Makes a reasonable attempt to communicate the threat to the third person and communicates the threat to the local police department or county sheriff for the area where the third person resides or for the area where the patient resides, or to the state police.

\*      \*      \*

(5) This section does not affect a duty a mental health professional may have under any other section of law. [Emphasis added.]

Defendant argued successfully to the circuit court that the statute serves as a bar to plaintiff's suit because, pursuant to the statute, it owed no duty to the decedent. Plaintiff now contends that this holding was in error. When courts construe statutory language, their primary goal is to ascertain and give effect to legislative intent. *Jenks v Brown,* 219 Mich App 415, 418; 557 NW2d 114 (1996). In order to determine legislative intent, this Court may examine the legislative history of an act to ascertain the reason for the act and the meaning of its provisions. *Id.* Among the legislative purposes in enacting the statute in 1989 was limiting the liability of mental health practitioners. *Id.,* citing House Legislative Analysis, HB 4237, July 11, 1989. In response to cases in which the common-law duty to warn had been extended to unnamed third parties and even to property, the statute limited a mental health practitioner's duty to third parties to

the duty provided in the statute. *Id.* at 418-419. It is apparent from the language of the statute and its legislative history that it is intended to protect only those readily identifiable individuals against whom a threat of physical violence is made. *Id.* at 419.

Plaintiff argued to the circuit court and now to this Court that the statute does not apply in the present case. According to plaintiff, the statute by its own terms applies only in those situations where a psychiatric patient has communicated a threat to a mental health professional against a reasonably identifiable third person. We disagree. MCL 330.1946; MSA 14.800(946) limits the duty a mental health professional owes to third persons such as plaintiff's decedent. Under the statute, the only duty owed is a duty to warn in those situations where a patient communicates a threat and the object of the threat is reasonably identifiable. In *Jenks*, the plaintiff had been awarded physical custody of his minor child in a modified judgment of divorce. The plaintiff sued his former wife's psychiatrist and the psychiatrist's employer, alleging that his former wife had communicated to the psychiatrist her intention to kidnap the child. This Court determined that because the plaintiff's former wife had not communicated a threat against the plaintiff, the defendants did not owe him a duty under MCL 330.1946; MSA 14.800(946). Moreover, the Court determined that because the plaintiff did not assert a claim on behalf of his son, the circuit court did not err in holding that the complaint failed to state a cause of action. *Jenks, supra* at 417-419. In the present case, plaintiff concedes that LaPalm had communicated no threat against the decedent or any other third party. The decedent had participated in

two visits with LaPalm in the preceding month that had gone well. Moreover, there is no evidence that LaPalm ever threatened or assaulted the decedent before the assault on August 23, 1992. Therefore, defendant owed no duty to warn or protect the decedent under the terms of the statute.

Plaintiff further argues that the statute does not apply in the present case because plaintiff's claim is not based upon a failure to warn but upon defendant's negligence in treating LaPalm. Plaintiff notes correctly that the type of claims it asserts are often brought together with a failure to warn claim, but they are separate questions. See *Paul v Plymouth General Hosp*, 160 Mich App 537, 541-542; 408 NW2d 492 (1987). However, plaintiff's argument fails because to the extent that he alleges a breach of duties on the part of defendant, those duties were owed to LaPalm and not to the decedent, as the circuit court correctly noted. Moreover, plaintiff's argument ignores the last sentence of MCL 330.1946(1); MSA 14.800(946)(1), which provides, "Except as provided in this section, a mental health professional does not have a duty to warn a third person of a threat as described in this subsection *or to protect the third person.*" (Emphasis added.) We believe that this language is unambiguous and clearly limits the duty a mental health professional owes to third persons to the duty to warn identifiable third persons "as provided in this section . . . ." Plaintiff cannot claim the benefit of any alleged breach of duty to LaPalm, and the statute plainly provides that defendant did not owe a duty to the decedent.

To the extent that plaintiff's position can be interpreted as arguing that defendant owed a common-law

duty to the decedent, rather than a statutory duty, we disagree with plaintiff's argument. An individual generally has no duty to protect another who is endangered by a third person's conduct. *Jenks, supra* at 420-421. A duty of reasonable care may arise where one stands in a special relationship with either the victim or the person causing the injury. *Id.* at 421. "Special relationships" recognized under Michigan law include psychiatrist-patient and doctor-patient. *Marcelletti v Bathani,* 198 Mich App 655, 664; 500 NW2d 124 (1993). Michigan courts have established in this context a duty of reasonable care toward only those third parties who are " 'readily identifiable as foreseeably endangered.' " *Jenks, supra* at 421, quoting *Marcelletti, supra* at 665.

In *Jenks,* the Court discussed the possibility of a mental health professional owing a common-law duty to third persons in the context of a trial court's refusal to allow the plaintiff leave to add a common-law theory of negligence to his complaint against the defendant. The panel did not decide whether a common-law duty flowing from psychiatrists to third persons had survived the enactment of MCL 330.1946; MSA 14.800(946). However, the panel determined that the proposed amendment was futile because the patient had not communicated any threat of violence against the plaintiff. *Jenks, supra* at 421. In the present case, we also do not need to decide whether a common-law duty survived the enactment of the statute because no foreseeable danger to plaintiff's decedent was made known during defendant's treatment of LaPalm. Nor did LaPalm communicate any threat of violence against the decedent or any other persons, except himself. Under these circumstances, defendant

had no common-law duty to warn or protect the decedent. See *id.*

Finally, plaintiff argues that MCL 330.1946; MSA 14.800(946) does not apply to the present case because he did not bring suit against a particular health professional but against a corporate institution. We note that the statute does not define "mental health professional" or specify whether that term includes mental health institutions such as defendant. However, this Court has held that the common-law duty to warn may be imposed upon psychiatric hospitals or other entities that undertake to render psychological treatment. *Hinkelman v Borgess Medical Center*, 157 Mich App 314, 322; 403 NW2d 547 (1987). We do not believe that the Legislature intended a different result under the statute.

Because we hold that summary disposition was properly granted on the ground that defendant owed no duty to the decedent, we do not need to address defendant's argument that plaintiff's claims were properly dismissed on public policy grounds.

Affirmed.