HAMPTON v WASTE MANAGEMENT OF MICHIGAN, INC

Docket No. 206240. Submitted March 10, 1999, at Detroit. Decided July 23, 1999, at 9:05 A.M. Leave to appeal sought.

Larry L. Hampton brought an action in the Genesee Circuit Court against Waste Management of Michigan, Inc., and Northwest Market, Inc., seeking damages under a theory of premises liability for injuries sustained when the plaintiff's ladder fell while he was on Northwest Market's property to inspect a roof on a building adjacent to that property. The plaintiff alleged that an oily substance had leaked from a dumpster supplied by Waste Management that was located in Northwest Market's parking lot and that the substance caused the ladder to slip. The court, Thomas C. Yeotis, J., granted the defendants' motion for summary disposition under MCR 2.116(C)(10). The plaintiff appealed.

The Court of Appeals held:

1. Summary disposition with regard to Waste Management was proper. No evidence suggested that Waste Management possessed or controlled the premises. A claim of premises liability is conditioned on the presence of both possession and control over the premises. Waste Management did not owe a duty to the plaintiff.

2. An owner of premises is liable for injury resulting from an unsafe condition on the premises caused by the active negligence of the owner or its employees or, if otherwise caused, where the condition is known to the owner or is of such a character or has existed a sufficient length of time that the owner should have had knowledge of it; a finding of constructive notice where an accident is occasioned by the act of an owner or its employees is limited to circumstances in which the act by the owner or employee that occasions the accident is an unreasonable act.

3. There is no evidence, as a matter of law, to reasonably support a finding that Northwest Market or any of its employees breached any duty to its invitees, licensees, or trespassers by merely having possibly placed in the dumpster a substance that leaked out. No evidence showed that Northwest Market or any of its employees had any knowledge of material ever leaking from the dumpster in the past, or should have anticipated that any material placed in the dumpster would leak from it, or knew or should have known of the

alleged presence of the oily substance during the time that the plaintiff was working in the parking lot before or at the time of the fall. Summary disposition was properly granted in favor of Northwest Market.

Affirmed.

1. REAL PROPERTY — PREMISES LIABILITY.

A claim of premises liability must be conditioned on the presence of both possession and control over the premises by the defendant.

2. REAL PROPERTY — PREMISES LIABILITY.

A proprietor having possession and control over its premises may be found liable for injury to a visitor that results from an unsafe condition on the premises either caused by the active negligence of the proprietor or its employees or, if otherwise caused, where the condition is known to the proprietor or is of such a character or has existed a sufficient length of time that the proprietor should have had knowledge of it; a finding of constructive knowledge where the accident is occasioned by an act of the proprietor or its employee is limited to circumstances in which the act is an unreasonable one.

*Bernstein & Bernstein, P.C.* (by *Michael J. Butler*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Jeffrey C. Gerish*), for the defendants.

Before: DOCTOROFF, P.J., and SMOLENSKI and WHITBECK, JJ.

PER CURIAM. Plaintiff Larry Lee Hampton appeals as of right the trial court's order granting summary disposition in favor of defendants Waste Management of Michigan, Inc., and Northwest Market, Inc., pursuant to MCR 2.116(C)(10) in this premises liability case. We affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

Hampton alleged in his complaint that, on October 6, 1995, at about 2:15 P.M., he was on Northwest Mar-

ket's property to inspect a roof on a building adjacent to the property and that a rubbish bin (the dumpster) owned by Waste Management was located on the property. According to the complaint, as Hampton was descending a ladder, "the ladder slipped out from under him as a result of an oily substance leaking from Defendant's [sic—Waste Management's] rubbish bin, thereby causing [Hampton] to fall" and resulting in injury.

Hampton indicated in his deposition testimony that he fell from a ladder on Northwest Market's property and that he "had grease and oily stuff all over [his] hands and face where [he] had hit right there at the bottom of the ladder." Hampton believed that the substance on him leaked out of the dumpster because "there was nothing else in the parking lot [other] than that dumpster."

Another witness, Jerry Wood, testified during his deposition that the ladder "just took off like it was on butter" at the time of the fall. Matt Gunsell, similarly indicated during his deposition that a substance like cooking oil, grease, or Crisco oil got on his clothes when he assisted Hampton after Hampton fell. Wood also described a "greasy film" on Hampton's body or clothes after the fall. Wood testified as follows regarding the dumpster on Northwest Market's premises:

> From the dumpster, from it sitting so long. And you could see where all the drainage of anything would come out of the dumpster, whatever it would be.

> *     *     *

> Well, when . . . . After we had called the paramedics and everything, to stand beside the dumpster [sic] . . . . And I do recall this. It was like from one corner to the back of the

dumpster to the other corner of the dumpster it looked like it had . . . like it was . . . just like it was weeping out of it down into . . . like it was draining out.

And it looked like a little . . : . You know, it formed down to like a little river like thing. You know, after something has been sitting so long, you know. It just builds out, then down.

However, no deposition testimony or other documentary evidence presented to the trial court specifically indicated when a substance allegedly leaked from the dumpster or the identity of who may have placed the substance in the dumpster.[1]

The trial court stated during a motion hearing with regard to defendants' motion for summary disposition under MCR 2.116(C)(10)  as part of its rationale for granting the motion that it thought "this whole case is so speculative that . . . . You know, you can talk about every case having some question of fact . . . I usually do . . . but in this one, I just . . . I just can't do it in good conscience because I really can't see where Northwest [Market] or Waste Management did anything inappropriate." Accordingly, the trial court entered an order granting summary disposition in favor of Waste Management and Northwest Market.

---

[1] Deposition testimony was also presented in relation to the circumstances under which Hampton was on Northwest Market's property for purposes of determining Hampton's status on the land, e.g., whether he was an invitee, a licensee, or a trespasser. However, that issue is not material to our resolution of this appeal. Charles Watmuff, an employee of Waste Management, also indicated in an affidavit that "leak testing" of the dumpster at issue found that it did not leak any water. However, we place no reliance on that affidavit in our analysis of this appeal.

## II. STANDARD OF REVIEW

This Court reviews decisions on motions for summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(10) tests whether there is factual support for a claim and is reviewed to determine whether the affidavits, pleadings, depositions, or any other documentary evidence establish a genuine issue of material fact to warrant a trial. *Spiek, supra.* On appeal, as below, all reasonable inferences are resolved in the nonmoving party's favor. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 615; 537 NW2d 185 (1995).

## III. GENERAL PRINCIPLES OF NEGLIGENCE LAW

To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Schultz v Consumers Power Co*, 443 Mich 445, 449; 506 NW2d 175 (1993); *Swan v Wedgwood Christian Youth & Family Services, Inc*, 230 Mich App 190, 195; 583 NW2d 719 (1998). Duty can arise from a statute or a contract or by application of the basic rule of common law, which imposes an obligation to use due care or to act so as to not unreasonably endanger the person or property of others. *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 95; 485 NW2d 676 (1992). If factual questions exist regarding what characteristics giving rise to a duty are present, the issue must be submitted to the factfinder. *Howe v Detroit Free*

*Press, Inc*, 219 Mich App 150, 155; 555 NW2d 738 (1996).

#### IV. DEFENDANT WASTE MANAGEMENT'S LACK OF DUTY UNDER PREMISES LIABILITY LAW

We may easily dispose of this appeal as regards Waste Management. Although Hampton argues that he was lawfully present on Northwest Market's premises, there is no evidence to suggest that Waste Management possessed or controlled the premises. A claim of premises liability is conditioned on the presence of both possession and control over the premises. *Kubczak v Chemical Bank & Trust Co*, 456 Mich 653, 660, 662; 575 NW2d 745 (1998). Therefore, we find, as a matter of law, Waste Management did not owe the requisite duty, *Schultz, supra*, to Hampton to support his claim against Waste Management. Accordingly, summary disposition of plaintiff's claim in regard to defendant Waste Management was proper.

#### V. PLAINTIFF'S CLAIM AGAINST NORTHWEST MARKET

The duty that a possessor of land owes to another person who is on the land depends on the latter person's status. *Stanley v Town Square Cooperative*, 203 Mich App 143, 146; 512 NW2d 51 (1993). The status of a person on land that the person does not possess will be one of the following: (1) a trespasser, (2) a licensee, or (3) an invitee. *Id.* at 147. The parties dispute the status held by Hampton when he was on Northwest Market's land at the time of his fall.

However, even if we assume without deciding that Hampton was an invitee entitled to the highest level of protection under premises liability law, Northwest

Market would be " ' "liable for injury resulting from an unsafe condition either caused *by the active negligence* of [itself] and [its] employees *or*, *if otherwise caused*, where known to the storekeeper or [the condition] is of such a character or has existed a sufficient length of time that [it] should have had knowledge of it." ' " *Berryman v K mart Corp*, 193 Mich App 88, 92; 483 NW2d 642 (1992), quoting *Serinto v Borman Food Stores*, 380 Mich 637, 640-641; 158 NW2d 485 (1968), quoting syllabus No. 1 in *Carpenter v Herpolsheimer's Co*, 278 Mich 697; 271 NW 575 (1937) (emphasis supplied).

Hampton argues that notice need not be shown where a dangerous condition is caused by a premises possessor or its employees. However, in keeping with the basic tenets of negligence law that require a breach of duty as an essential element of a valid negligence claim, *Schultz, supra; Swan, supra*, and the above language from *Berryman* and *Serinto*, we conclude that this principle applies only where an employee of a premises possessor creates a dangerous condition through an *unreasonable* act or omission that breaches a duty owed to a visitor on the land. In other words, that a *reasonable* act or omission of a premises possessor or its employee plays a role in the creation of a dangerous condition does not make the premises possessor liable for any injury to an invitee that is causally connected to that reasonable act or omission. While this may be so basic as not to have been expressly addressed in prior Michigan case law, this concept is inherent in the well-established principle that a possessor of land "is not an insurer of the safety of an invitee." *Stanley, supra* at 150. For example, Northwest Market's reasonable

act of simply having a parking lot and a building on the land were remote causal factors in this accident. Obviously, that does not serve to impose liability on Northwest Market for any injuries that Hampton suffered in his fall from the ladder because the maintenance of a parking lot and building for business purposes is a reasonable act and thus not a breach of duty toward an invitee.

Similarly, we conclude as a matter of law that there is no evidence to reasonably support a finding that Northwest Market or any of its employees breached any duty to its invitees (or by necessary implication to its licensees or trespassers on its land) by merely having possibly placed a substance in the dumpster that leaked out. Under the circumstances of this case, it may well be highly questionable whether there was sufficient evidence to reasonably support a factual determination that an oily substance leaked from the dumpster to the area where Hampton's ladder rested on the parking lot surface. See, e.g., *Berryman, supra* at 92 (a prima facie case of negligence may be established with the use of legitimate inferences, but requires more than conjecture).

Nevertheless, even if we presume that the substance did so leak from the dumpster, there is no indication that Northwest Market or any of its employees had any knowledge of material ever leaking from the dumpster in the past. Thus, there was no evidence presented to reasonably support a finding that either Northwest Market or any of its employees should have anticipated that any material placed in the dumpster would leak from it. Also, there was no evidence that Northwest Market or any of its employees knew or should have known, *Berryman, supra* at

92, of the alleged presence of the oily substance during the time that Hampton was working in and near its parking lot before or at the time of his fall. Thus, we conclude that the trial court properly granted summary disposition in favor of Northwest Market pursuant to MCR 2.116(C)(10) because there was no evidence of an unreasonable act or omission by Northwest Market or any of its employees that was a proximate cause of Hampton's accident or that Northwest Market had actual or constructive notice of the alleged leak from the dumpster.

We note that the case at hand is distinguishable, both legally and factually, from *Berryman, supra.* In *Berryman, supra* at 89, the plaintiff slipped and fell in one of the defendant's stores. This Court concluded that the trial court erred in granting the defendant's motion for a directed verdict where the evidence supported a logical inference "that defendant's employees had mopped the floor on which Mrs. Berryman had fallen and that they had failed to post adequate warning signs." *Id.* at 93. This Court observed that the principal plaintiff in *Berryman* "established that defendant owed her a duty, that defendant breached that duty by creating a condition that was dangerous, that the condition created caused her injury, and that she suffered damages." *Id.* at 93-94.

It is true that the *Berryman* Court also stated that "[b]ecause the evidence leads to an inference that defendant created the condition that caused [the principal plaintiff's] fall, proof of notice is unnecessary . . . ." *Id.* at 93. However, as we noted above, the *Berryman* panel had previously stated the principle that a storekeeper is liable for injury resulting from the *active negligence* of its employees. *Berryman*

may not reasonably be read for the extraordinary proposition, totally at odds with basic principles of negligence law, that a premises possessor may be held liable for harm that inadvertently results in an attenuated sense from a *reasonable* act by an employee of the premises possessor, i.e., placing trash in a dumpster in ordinary circumstances. Rather, the circumstantial evidence in *Berryman* would have supported a finding that the defendant's employees failed to post adequate warnings of a floor that was wet because it had been mopped, and thus that the defendant's employees were actively negligent. Accordingly, *Berryman*, *supra* at 92-93, stands for the simple principle that where a plaintiff invitee in a premises liability case has presented evidence sufficient to support a finding of active negligence by a defendant storekeeper's employees that created a dangerous condition resulting in injury to the plaintiff, the plaintiff does not need to present further evidence that the defendant was on notice of the dangerous condition to avoid a directed verdict. However, because Hampton presented no evidence to support a finding of active negligence by Northwest Market or its employees in connection with his unfortunate fall, this principle from *Berryman* is inapplicable.

We acknowledge that in *Albro v Total Petroleum, Inc*, 108 Mich App 1, 4; 310 NW2d 252 (1981), a case invoked by Hampton, this Court stated, in the course of reversing a grant of summary disposition in favor of the defendant in a premises liability case, that, "[n]otice may be inferred, however, where the presence of the substance causing the accident is 'occasioned by the proprietor or an employee.' [*Suci v Mirsky*, 61 Mich App 398, 402; 232 NW2d 415

(1975)]."[2] However, we conclude, in accordance with our above discussion, that a finding of constructive notice where an accident is "occasioned" by the act of a proprietor or its employee is limited to circumstances in which the act by a proprietor or employee that "occasions" the accident is an *unreasonable* act. In this regard, we note that the circumstances of *Albro* involved the principal plaintiff's having allegedly slipped and fallen on spilled coffee at a place of business after the building became dark because of a complete power failure. *Albro, supra* at 2-3.

Further, the place at which the principal plaintiff in *Albro* allegedly fell was near the employees' coffee room that was supposed to be used only by employees of the defendant company, which provided sufficient circumstantial evidence to support a finding that an employee of the defendant spilled the coffee. See *id.* at 3-5. If an employee of a business spills coffee on a floor and fails to clean it up, this would almost always be an unreasonable act. Thus, the circumstantial evidence in *Albro* that an employee of the defendant in that case did exactly that was sufficient to defeat the defendant's motion for summary disposition. Accordingly, the *Albro* panel had no occasion to consider a situation in which a *reasonable* act by a business proprietor or its employee allegedly played a direct causal role in an injury to a plaintiff.

In the case at hand, at most the evidence presented arguably supported a finding that Northwest Market or one of its employees placed trash in a dumpster and that an oily substance in that trash leaked from

---

[2] In *Suci, supra* at 402, this Court likewise stated in dicta, "[k]nowledge of the unsafe condition is inferred where occasioned by the proprietor or an employee."

the dumpster. Without more, however, that is insuffi-
cient to support a finding of negligence because plac-
ing trash in a dumpster is ordinarily a reasonable act.
In sharp contrast to spilling coffee on the floor of a
building and failing to clean it up, placing trash in a
dumpster in or near a parking lot does *not* ordinarily
involve the creation of a direct danger to visitors to
the parking lot.

In sum, the trial court properly granted summary
disposition in favor of both Waste Management and
Northwest Market under MCR 2.116(C)(10).

Affirmed.