# STATE OF MICHIGAN

# COURT OF APPEALS

---

LESLEY HOUGHTALING,

        Plaintiff-Appellee,

v

HEALTHCARE REALTY, INC.,

        Defendant,

and

ST. JOHN MACOMB-OAKLAND HOSPITAL,
doing business as ST. JOHN HEALTH SYSTEM
DETROIT-MACOMB CAMPUS,

        Defendant-Appellant.

UNPUBLISHED
May 15, 2018

No. 337162
Macomb Circuit Court
LC No. 2015-002999-NO

---

Before: BORRELLO, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

In this premises liability action, defendant-appellant, St. John Macomb-Oakland Hospital, doing business as St. John Health System Detroit-Macomb Campus (St. John Hospital),[1] appeals by leave granted the trial court's order denying defendant's motion for summary disposition under MCR 2.116(C)(10). For the reasons set forth in this opinion, we reverse the trial court's order and remand this matter for entry of an order granting summary disposition in defendant's favor.

## I. BACKGROUND

This case arises out of a slip and fall in a parking lot. Plaintiff, Lesley Houghtaling, testified during her deposition that on December 29, 2014, she arrived at the St. John Hospital

---

[1] In the trial court, all of plaintiff's claims against defendant Healthcare Realty, Inc., were dismissed without prejudice by stipulation. Because defendant Healthcare Realty has been dismissed and is not a party to the instant appeal, our use of the word "defendant" throughout this opinion refers only to St. John Macomb-Oakland Hospital.

-1-

and Medical Building parking lot for her 7:00 a.m. physical therapy appointment at Mendelson Kornblum Orthopedic & Spine Specialists (Mendelson Kornblum). Plaintiff alleged in her first amended complaint that this premises was owned by defendant and that Mendelson Kornblum rented space from defendant. Plaintiff testified during her deposition that she left her house at approximately 6:40 a.m. and arrived at the St. John Hospital parking lot by approximately 6:54 a.m. Regarding the weather conditions that morning as she went to her appointment, plaintiff testified that it "was a normal day," the temperature was "in the 40s," and there had not been any snow yet that winter. The sun had not started to come up yet when she left her home that morning, and it was still dark outside. Plaintiff did not see any accumulations of snow or ice at any point before she arrived in defendant's parking lot, none of the pavement before she arrived at the parking lot was wet, and she did not have to use her windshield wipers as she drove that morning. Plaintiff testified that the weather had been the same on the previous day, and she did not know what the low temperature was during the night before her appointment.

According to plaintiff's deposition testimony, she parked close to the medical building when she arrived. No other cars were parked in the immediate vicinity, and there was only one other car in the entire parking lot. The other car did not have its headlights on, and there were no parking lot lights on when she arrived. Plaintiff testified that the parking lot was black and made of asphalt.

Plaintiff testified that as she was getting out of her car, she slipped. She opened her car door, put her left foot out of the car, and began to put her weight on it. Then she started to turn to shut the door and slipped. As plaintiff described it, "My one foot, I had one foot out, I went to go turn and shut the vehicle and I slipped out from under my foot." Plaintiff further explained, "I was literally opening up the door and then I went to shut it and I went flying in the air that way." Plaintiff tried to grab the car door to brace her fall, but her foot continued to slip out from underneath her. She fell down and her head was the first part of her body to strike the ground. Then her lower back hit the ground. Her left elbow also struck the ground, and the fall "affected [her] knee," although her left knee cap never directly struck the ground. Plaintiff remained on the ground for "[p]robably a minute or so, couple." She did not lose consciousness, she was not bleeding, and she never had a lump on her head at the time of the fall or afterward.

Plaintiff testified that once she got up from the fall, she saw that she had slipped on ice. According to plaintiff's deposition testimony, it "was a divot with ice" and there was no wetness or puddling in the area. Plaintiff testified that the ice patch was a circle that was approximately two or three feet in diameter and that none of the ice was covered by her car. According to plaintiff, the ice looked black, just like the surface of the parking lot. She was only able to see it when she was getting up. Plaintiff testified that she did not see any ice other than in the spot where she fell, and she took some photographs of the ice with the camera on her smart phone before going into Mendelson Kornblum. Plaintiff did not know if the hospital or anyone responsible for the parking lot actually knew that there was any ice in the parking lot that morning. Once inside Mendelson Kornblum, plaintiff completed an incident report, describing the incident. Plaintiff also took additional photographs the next day when it was light outside, but there was water on the parking lot surface by this time because the ice had melted.

After plaintiff reported her fall, two Mendelson Kornblum employees, Jennifer Trevorrow and Amy Hauxwell, went out to look at the spot where plaintiff fell and saw the ice.

Trevorrow testified during her deposition that she did not know when the ice patch at issue formed or where the moisture that caused the ice patch came from. Hauxwell also testified during her deposition that she did not know how long the wetness or ice patch was on the ground before plaintiff's fall, that she did not know how the moisture first came to be on the ground allowing the ice to form, and that she did not know where the moisture originated from.

Another Mendelson Kornblum employee, Deedria Johnson, testified that she had arrived for work at approximately 6:45 a.m. on the day of plaintiff's fall. She typically arrived early for work and sat in her car for a while before walking in to start her shift at 7:30 a.m., which is what she did on this particular day as well. Johnson testified that it was dark outside at that time, "[l]ike nighttime dark." There was no snow or sleet that morning. According to Johnson, the sun was not up yet, and there was a light pole near where she parked in the parking lot. However, she did not recall whether it was on or off that morning. However, another Mendelson Kornblum employee, Victoria Cassar, testified that she believed this light was working that morning because she would have noticed if it had not been working. Johnson testified that the lighting at that time typically stayed "dim" until approximately 7:20 a.m. Johnson also explained that there was a separate entrance to the building reserved for physical therapy patients and that Johnson always used the other entrance along with other employees. There was also a raised "curb-type" divider separating the two parking lots. That morning, Johnson was parked in her usual parking spot near the divider. Johnson explained that the other parking lot was "a whole separate parking lot" and that she would never walk that path. With respect to the temperature that morning, Johnson testified that it "couldn't have been too bad out" because the heat in her car did not work and she would not have been sitting in her car if it had been very cold outside. She also testified that there were not any accumulations of snow anyplace in sight.

Johnson testified that approximately 10 minutes after she parked in the parking lot, she saw plaintiff drive into the parking lot and park. It was still dark outside. Johnson was facing the back of plaintiff's car, and plaintiff's car was approximately 50 to 60 feet in front of Johnson's car. Johnson testified, "I saw the door open, like she was going to get out. The next thing I know, she's on the ground." Johnson saw plaintiff fall and saw her head hit the ground, but she did not see her body hit the ground. Johnson further testified that she did not see what caused plaintiff to fall. According to Johnson, after plaintiff fell, "she got right up and she went inside." Johnson got out of her car and went into work. She mentioned to someone that she had seen somebody fall in the parking lot, and she was told that the individual fell on some ice. Johnson testified that she had not actually seen any ice, and she did not know if there was ice in any other portions of the parking lot that morning. Johnson further testified that she did not know when any ice would have formed in the spot where plaintiff fell.

Additionally, Johnson also testified that she had slipped and fallen previously in the same parking lot. According to Johnson, "In 2013, I opened my door, literally stepped and went down. I didn't know there was ice underneath my car." Johnson further explained that this fall occurred at approximately 7:00 a.m. in February 2013. Johnson indicated that she did not see the ice at the time. There was no testimony about the weather conditions that day. Johnson did not get hurt, but she complained to her management. Management had changed since that time.

Plaintiff initiated this action on August 24, 2015. Defendant subsequently moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that there was no evidence that

defendant had actual or constructive notice of the ice on which plaintiff slipped and that the condition was an avoidable, open and obvious hazard even if plaintiff could demonstrate the requisite notice. In response, plaintiff argued that defendant had notice of the condition based on Johnson's testimony that she had previously fallen on a patch of black ice in the parking lot and that the condition was not open and obvious because the ice was not visible and the lighting in the parking lot was inadequate.

Following a hearing on the motion, the trial court issued a written opinion and order denying defendant's summary disposition motion. In reaching this conclusion, the trial court reasoned as follows:

> The mere fact that defendant St. John Macomb-Oakland Hospital would have been aware of ice in the parking lot in February 2013 does not establish defendant St. John Macomb-Oakland Hospital had actual notice of any ice in the parking lot in December 2014. However, reasonable minds could conclude defendant St. John Macomb-Oakland Hospital should have known of the danger due to various spots of ice in the parking lot.

> Moreover, there is a question of fact as to the level of lighting in the parking lot. The weather and surrounding parking lot conditions would not have necessarily alerted plaintiff to the presence of ice. Significantly, plaintiff did not see any ice when she opened her car door and tried to step out. While plaintiff was able to see the ice after falling and standing back up, she described it as blending into the parking lot.

> Therefore, reasonable minds could differ as to whether the ice would have been observable upon casual inspection.

Defendant applied for leave to appeal to this Court, and leave was granted. *Houghtaling v Healthcare Realty, Inc.*, unpublished order of the Court of Appeals, entered June 21, 2017 (Docket No. 337162).

## II. STANDARD OF REVIEW

A trial court's grant or denial of summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion for summary disposition under MCR 2.116(C)(10) requires the reviewing court to consider the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Rambin v Allstate Ins Co*, 495 Mich 316, 325; 852 NW2d 34 (2014) (quotation marks and citation omitted). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

"Questions regarding whether a duty exists are for the court to decide as a matter of law." *Mouzon*, 308 Mich App at 418. "Issues of law are also reviewed de novo." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 477; 760 NW2d 287 (2008).

-4-

## III. ANALYSIS

Defendant first argues that the trial court erred by denying its summary disposition motion because there was no evidence that defendant had actual or constructive notice of the ice patch on which plaintiff slipped.

A plaintiff asserting a premises liability action "must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages. *Mouzon*, 308 Mich App at 418 (quotation marks and citation omitted). The duty that a landowner owes to a visitor depends on whether the visitor is classified as a trespasser, licensee, or invitee. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). However, the parties in the instant case do not dispute that plaintiff was an invitee, and it is well established that "invitee status is commonly afforded to persons entering upon the property of another for business purposes." *Id*. at 597. Therefore, we apply the duty owed to an invitee to the instant case, which is "the highest level of protection under premises liability law." *Id*.

Our Supreme Court has explained the duty owed to invitees as follows:

> With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land. Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect. [*Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012) (citation omitted).]

In accord with this duty, our Supreme Court has explained that a premises liability claim requires a plaintiff "to establish that defendant, as a premises owner, possessed actual or constructive notice of the dangerous condition." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 10; 890 NW2d 344 (2016). The *Lowrey* Court further explained the well-settled legal principles regarding a premises owner's liability based on notice of a dangerous condition:

> "The proprietor is liable for injury resulting from an unsafe condition caused by the active negligence of himself and his employees; and he is liable when the unsafe condition, otherwise caused, is known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have knowledge of it." [*Id*. (citation omitted).]

"The plaintiff, however, bears the burden of proof of establishing that the defendant breached this duty of care, i.e., the defendant knew or should have known 'of a dangerous condition on the premises of which the invitee [was] unaware and fail[ed] to fix the defect, guard against the defect, or warn the invitee of the defect.' " *Id*. at 10 n 2 (citation omitted).

In this case, there was no evidence introduced to demonstrate that defendant had actual or constructive notice of the patch of ice on which plaintiff allegedly slipped and fell. Plaintiff testified that the temperature was in the 40s on the morning of her fall and that it had not yet snowed at all that winter. Plaintiff further testified that she did not see any accumulations of

snow or ice as she drove to her physical therapy appointment, that the pavement was not wet, and that she did not have to use her windshield wipers as she drove that morning. According to plaintiff, the weather was the same on the previous day. Similarly, Johnson testified that there was no sleet or snow that morning, that there were not any accumulations of snow that she saw in the parking lot, and that it was not cold that morning. Johnson also testified that she did not see any ice that morning and that she did not know if there was ice in any other part of the parking lot. Furthermore, there was also testimony from Mendelson Kornblum employees, Trevorrow and Hauxwell, that they did not know when the ice patch at issue had formed, where the moisture that caused the ice patch had originated, how the moisture first came to be on the ground allowing the ice to form, or how long the wetness or ice patch was on the ground before plaintiff's fall. Johnson, who also worked for Mendelson Kornblum, testified similarly that she did not know when any ice would have formed in the area where plaintiff fell.

In short, there was no evidence that defendant or anyone affiliated with defendant actually knew at any point before plaintiff's fall about the existence of the actual ice patch on which plaintiff slipped. *Lowrey*, 500 Mich at 10. Furthermore, based on the evidence that the temperature was fairly warm for December, that there had not been any recent precipitation, that there were no nearby accumulations of snow or ice, that it had not even snowed yet that winter, and that Mendelson Kornblum employees did not have any knowledge regarding the origination of the moisture that formed the ice, there is no evidence that the ice patch was "of such a character or ha[d] existed a sufficient length of time that [defendant] should have [had] knowledge of it." *Id*. (citation omitted). There also was no evidence that the ice patch was the result of negligent acts committed by defendant or its employees. *Id*. Therefore, plaintiff failed to establish that defendant had actual or constructive notice of the condition and cannot maintain this premises liability action. *Id*. "[A] possessor of land is not an insurer of the safety of an invitee." *Hampton v Waste Mgt of Mich, Inc*, 236 Mich App 598, 604; 601 NW2d 172 (1999). The fact that Johnson slipped on ice in the parking lot in February 2013 is completely irrelevant to whether defendant had notice of a different patch of ice in a different part of the parking lot in December 2014—more than a year and a half later—especially considering that there is no evidence in the record regarding the weather conditions on the day that Johnson slipped in 2013. Accordingly, plaintiff's reliance on this fact to show that defendant had notice is completely misplaced. Because there was no genuine issue of material fact with respect to defendant's lack of notice of the condition, defendant was entitled to summary disposition in its favor. *West*, 469 Mich at 183.

In light of our conclusion that defendant was entitled to summary disposition in its favor, defendant's additional argument that the condition was open and obvious is moot because there is no further relief that this Court could grant. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief."). We need not address defendant's open-and-obvious argument because an appellate court generally will not decide moot issues. *Id*.

Reversed and remanded to the trial court for entry of an order granting summary disposition in favor of defendant. We do not retain jurisdiction. Defendant, having prevailed, may tax costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Kathleen Jansen